**Chester A. HAWKS, Appellee,**

**v.**

**C. C. PEYTON, Superintendent of the Virginia State Penitentiary, Appellant.**

**No. 10608.**

United States Court of Appeals Fourth Circuit.

Argued Oct. 5, 1966.

Decided Dec. 1, 1966.

Reno S. Harp, III, Asst. Atty. Gen. of Virginia (Robert Y. Button, Atty. Gen. of Virginia, and James Parker Jones, Asst. Atty. Gen. of Virginia, on the brief), for appellant.

Gilbert H. Wilson, Norfolk, Va. (Court-assigned counsel), Preston, Preston & Wilson, Norfolk, Va., on the brief, for appellee.

Before HAYNSWORTH, Chief Judge, and BRYAN and WINTER, Circuit Judges.

ALBERT V. BRYAN, Circuit Judge:

On habeas corpus from the District Court Chester A. Hawks, a felon in the Virginia penitentiary, was ordered retried or released, and the State appeals. We reverse.

In 1966, several years after his conviction of murder with a life sentence, Hawks appropriately petitioned the Federal court for discharge on the ground that he was insane at the time of trial, January 6, 1959. Disclaiming any finding of mental incompetency either when tried or when he committed the homicide, or a finding of Hawks' inability to assist in his defense, the District Court ordered his retrial or release solely on the ground that the State judge abused his discretion in not granting the accused's pretrial motion for an inquiry de lunatico. The applicable Virginia statute then read:[1]

"If, prior to the time for trial of any person charged with crime, either the court or attorney for the Commonwealth has reason to believe that such person is in such mental condition that his confinement in a hospital for the insane * * * is necessary for proper care and observation, the court or the judge thereof *may, after hearing evidence on the subject,* commit such person * * * to any State hospital for the insane best adapted to meet the needs of the case * * *. In any such case the court, *in its discretion, may* appoint one or more physicians skilled in the diagnosis of insanity, or other qualified physicians, * * * not to exceed three, to examine the defendant before such commitment is ordered, make such investigation of the case as they may deem necessary and report to the court the condition of the defendant at the time of their examination. * * *" (Accent added.)

Subsequent provisions directed a report by the hospital to the court in respect to its findings of the mental state of the defendant.

The motion here, advanced by a lawyer of experience retained for Hawks by his brothers, suggested the incompetency of his client on the basis of low mentality as known generally to the lawyer, and on Hawks' assertion that he could not recall the circumstances of the crime. The request was that he be committed to the State mental hospital for observation and study. We hold that the evidence adduced on the motion does not show that the trial judge's refusal to order commitment to the hospital or examination by "physicians skilled in the diagnosis of insanity" was an abuse of discretion of Constitutional stature.

The question before the State judge was whether there was "reason to believe" Hawks was incompetent. In his concern for the accused's interest, the Court called upon the services of a community-recognized physician. A general practitioner, he made no pretensions to an intimate acquaintance with psychiatry or mental disease. As it was a rural community, no specialists were immediately at hand. Accompanied by defense counsel, the judge himself went to the jail to observe Hawks during his examination by the doctor. Later, the doctor talked at length with the accused alone.

At the hearing on the motion in the State court the physician testified he found no mental infirmity in Hawks save a low intelligence. There was proof of epilepsy in the family and of an attempt by the defendant to kill himself after his crime. Two laymen gave evidence, but its purport is not known now because there was no transcript of the proceedings. Of course, the hearing afforded the judge a further opportunity to appraise Hawks in the light of his demeanor. This was the evidence which the State judge found inadequate, and we think permissibly, to warrant further investigation.

In the District Court habeas corpus proceeding in 1966 the doctor could not recall his examination of Hawks or his

---

1. Va.Code, section 19.1–228. It was amended in 1964 to include specifically defendant's attorney as a permissible mov-

ant, but in practice this right had always been accorded to him.

own testimony in the State court preliminary hearing in December 1958 or early 1959. However, the trial judge did remember and he repeated the doctor's report to the court. Hawks' attorney testified that he was confident of the doctor's ability and sincerity, and so had pursued the motion no further. He also said that his client seemed quite capable to assist him, except for an insistence upon a total ignorance of the fact or facts of the homicide.

■ Under both State and Federal procedures a simple suggestion of mental deficiency is not enough to require deferment of the trial. Commitment to a hospital or other means of inquisition is not granted ex mero motu; it is not a perfunctory order. The Virginia statute contemplates that the Court should rule on the suggestion "after hearing evidence". Tilton v. Commonwealth, 196 Va. 774, 85 S.E.2d 368, 371 (1955); Wood v. Commonwealth, 146 Va. 296, 135 S.E. 895, 898 (1926). The Federal statute, 18 U.S.C. § 4244, allows such a pretrial inquisition if there is "reasonable cause to believe" the accused is insane or otherwise mentally incompetent, thus contemplating a demonstration of acceptable grounds for the belief. See United States v. Wilkins, 334 F.2d 698, 702–703 (6 Cir. 1964); Lebron v. United States, 97 U.S.App.D.C. 133, 229 F.2d 16, 18–19 (1955), cert. den. 351 U.S. 974, 76 S.Ct. 1035, 100 L.Ed. 1492 (1956). No such substantiation was presented here.

■ Opportunity to provide the substantiation, the District Court held, was denied Hawks by the failure of the State court either to import a psychiatrist to make an examination, or to send Hawks to the hospital for this purpose immediately, as the statute permitted one or both courses. The omission was said to be an abuse of discretion and to result in a denial of due process.

Discretion, however, is not exercisable until the need appears. The trial judge himself diligently pursued the exploration into counsel's suggestion. Abuse of discretion is not proved by the court's

consultation with a trusted and reputable medical man notwithstanding he did not qualify as an alienist. Nor is it evidenced in the judge's attending the doctor's first interview with Hawks; nor in allowing the doctor to talk with the accused alone for several hours.

If the view of the District Judge were to prevail, then the mere mention by counsel of the possibility of mental instability would of itself compel commitment or the employment of psychiatrists. This we think is more than a defendant's rights demand.

No resemblance is there here to Thomas v. Cunningham, 313 F.2d 934 (4 Cir. 1962), or Pate v. Robinson, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966), where the proof of the weakness of mind of each accused was known before trial but disregarded. Presently, the State judge was rigidly conforming to the mandates of those decisions. He was affording the requisite hearing; he was searching for proof, if any there was, warranting a more extended examination of Hawks. He could unearth none.

Fully vindicating the State judge's ruling were the subsequent examinations of Hawks and the later observations of his conduct. Within a month after his conviction he received a psychiatric examination at the penitentiary and was found competent. This has been the result of every succeeding inquiry, even as late as the examination ordered by the District Court in this case.

Our decision rests on the particular facts of this case. Nothing herein is intended to derogate from the desirability, we have heretofore expressed, of providing examination of the accused by doctors trained in psychiatry when a sufficient showing has been made of a doubt of his mental condition to stand trial. See Jacobs v. United States, 350 F.2d 571 (4 Cir. 1965); United States v. Kendrick, 331 F.2d 110 (4 Cir. 1964). Consistently, we urge the trial courts not to be overexacting in conducting Federal trials, or in passing upon the rulings in State prosecutions, as to the showing demanded before mental examinations are required

to resolve a question of trial-competency. The approach we would encourage is reflected in the two cases just cited.

The judgment of the District Court cannot stand, and the petition for habeas corpus will be denied and dismissed.

Reversed and petition dismissed.