Roland TYLER, Appellant,

v.

Dr. George J. BETO, Director, Texas Department of Corrections, Appellee.

No. 24348.

United States Court of Appeals
Fifth Circuit.

March 8, 1968.

Rehearing Denied April 19, 1968.

James E. Crowther, Houston, Tex., for appellant.

Lonny F. Zwiener, Asst. Atty. Gen., Robert E. Owen, Asst. Atty. Gen., Austin, Tex., for appellee.

Before BELL, COLEMAN and GOD-BOLD, Circuit Judges.

COLEMAN, Circuit Judge:

The appellant is here *in forma pauperis* and on a certificate of probable cause. With the assistance of court appointed counsel he seeks reversal of the Judgment of the District Court denying the writ of habeas corpus after an evidentiary hearing and the reception of written briefs for the parties. We affirm.

The following constitutes a fair résumé of what the record reveals as to the history of this appellant:

| | |
|---|---|
| 1910 | Born, Jefferson County, Texas. Eighth Grade Education. |
| 1930 | Twice convicted of burglary. |
| 1933 | Convicted of burglary and theft. |
| 1935 | Convicted of burglary and theft. |
| 1935 | Escaped from Texas Penitentiary. |
| 1938 | Convicted of murder at Galveston, Texas, in the slaying of his jailer while escaping. |
| 1942 | Escaped Texas Penitentiary and at large for two months and twenty-four days. |
| 1943 | Placed in solitary for mutiny. |
| 1943 | Twice convicted of felony, theft committed while on above escape. |
| 1947 | Punished for stabbing and cutting a fellow prisoner with a dirk. |
| 1956 | Released on conditional pardon. |
| 1956 | (Three months after release) Attempted to hold up a filling station, in the course of which he shot the attendant. Convicted of attempted robbery by assault and returned to prison on revocation of the conditional pardon for murder. |
| December 27, 1963 | By application for *habeas corpus*, for the first time challenged the validity of the 1938 murder conviction. |

In the lapse of time since the original murder conviction in the state court, more than a quarter of a century, all participants except the defendant himself have departed for their appearances before that errorless Court on High. The trial judge is dead and so is the prosecuting attorney; the two defense attorneys are dead and so is the clerk of the court. At this late date nothing remains but the official court records and the personal testimony of the petitioner, an oft convicted perpetrator of violent and deadly crime.

There is no stenographic trial transcript because Tyler, with the advice of counsel, having escaped the penalty of death for the murder of his jailer, in open court waived appeal and requested that he be sentenced forthwith.

The entries in the Criminal Docket in the 56th Judicial District Court of Galveston County, Texas, as to the separate trials of this appellant and his two co-defendants, who were likewise convicted and given long sentences (although Tyler was admittedly the gun handler), will be set out as Item 1 in the Appendix to this opinion. The Judgment of trial, sentence, and conviction, which appears to be regular in all respects, will likewise appear as Item 2.

It is now contended that the District Court erred when it found that the Judg-

ment of the state court should not be set at naught. It is argued that in the state court appellant was denied the effective assistance of counsel, that he was improperly denied a determination of his sanity, and that he was likewise denied an intelligent choice as to the pursuit of his right of appeal.

In support of the writ, appellant testified in the District Court. The substance of it is as follows:

When the state court came to appoint counsel, Tyler indicated that he desired the assistance of Attorney John H. Austin. The court honored this request. About three days later Mr. Austin came to the jail, talked with Tyler, and stated that he was sorry that his services had been requested because both he and his wife were good friends of the slain jailer and his wife. On this occasion Austin said, "I can't in good conscience, defend you". Appellant then told Austin that if Austin could not defend him he was sorry but asked Austin to subpoena his mother and cousin as witnesses. Austin did not ask Appellant anything about the crime or anything involving the offense with which he was charged, nor were any arrangements made of any sort with regard to defending the appellant. This conversation lasted three minutes and appellant did not see Austin or any other lawyer from that date until the day he appeared for trial in the courtroom. On the day that he went to trial, appellant met, for the very first time, Attorney Henry Greenberg, the attorney who actually tried the case. The manner in which this attorney was selected to represent appellant was and is completely unknown to appellant. Appellant first knew that he would be represented by Attorney Greenberg when the latter mentioned this to him in the courtroom. The trial began fifteen minutes later. Attorney Greenberg made a motion for a continuance in order to have more time for the preparation of the case but this was denied. Mr. Austin, counsel originally appointed, then told the Court that he did not want to represent Tyler but the

Judge declined to release him since appellant had asked for him.

Let us emphasize that this is Tyler's version of what took place.

Appellant admitted that Austin was at the counsel table throughout the trial and made a closing argument in his behalf, although he said this lasted for only four minutes.

Of course, if the Court below had believed this testimony, or had been compelled to believe it because it was impervious to contradiction by reason of the activities of the Grim Reaper, this would constitute a glaring instance of ineffective assistance of counsel.

Obviously, the District Judge did not believe it.

He found " * * * that on the basis of the credible evidence in this case Petitioner was not denied the effective assistance of counsel at the state murder trial".

■ Credibility is for the trier of the facts and the uncontradicted testimony of a witness does not have to be accepted, Hawk v. Olson, 326 U.S. 271, 66 S.Ct. 116, 90 L.Ed. 61 (1945). The petitioner in a habeas corpus proceeding has the burden of proof to *establish* sufficient facts to warrant a finding of denial of constitutional rights, Scott v. Walker, 5 Cir., 1966, 358 F.2d 561; Labat v. Bennett, 5 Cir., 1966, 365 F.2d 698. Unless the trial court's findings on a habeas corpus petition are clearly erroneous they will be upheld, King v. Heard, 5 Cir., 1962, 310 F.2d 127, cert. denied 375 U.S. 854, 84 S.Ct. 114, 11 L.Ed.2d 81 (1963). The proposition has equal force where, as here, the trial judge makes a credibility determination on the evidence presented, Di Prima v. Beto, 5 Cir., 1967, 373 F.2d 797.

■ The United States District Judge observed the witness as he gave his testimony. He was entitled to weigh his credibility against the impeachment presented by many criminal convictions. Except for a stenographic trial transcript, he had before him the official

court records. These records reflected a careful observance of the appellant's fundamental rights. The trial lasted for three full days, hardly consistent with a three minute or a fifteen minute preparation. Admittedly, Attorney Austin did participate in the trial throughout, even in the closing argument. The written application for the appointment of a psychiatrist, Appendix, Item 3, recited that Greenberg had also been appointed to represent Tyler. Probably the most effective test of all is to be found on the outcome of the trial. Although found guilty of murder committed while escaping from lawful custody, as his co-defendants had been, the jury did not impose the death penalty.

We now come to the second element of this appeal, the failure to appoint a psychiatrist and to hold a sanity hearing.

Tyler testified that on the morning of the second day of the trial his attorneys presented a written motion for the appointment of a competent psychiatrist to examine him. This motion survives as a part of the record and, in full, will appear as Item 3 in the Appendix to this opinion. He further testified that about half-way through the trial, a psychiatrist upon being given permission to speak to the court stated that he had been observing appellant and that he believed he needed a psychiatric examination. The doctor offered to give such an examination if the court would permit. This conversation took place in the presence of the jury. The judge permitted the examination in chambers for twenty to thirty minutes. The doctor later testified, said Tyler, based on this examination and a discussion with appellant's parents, and offered the opinion that the defendant was insane.

While the jury was deliberating upon its verdict it submitted to the court the following written inquiry:

"The Jury as a body are in agreement as to the guilt of the defendant as charged.

"Certain members favor life imprisonment instead of the death penalty.

Dr. Brown's testimony in the case was a deciding factor in forming their opinion. We wish to know if Dr. Brown's testimony can or should be used by the Jury in determining assessment of punishment.

"What is the minimum term that the defendant would be compelled to serve if a life sentence was imposed?"

The Court responded in writing as follows:

"In answer to your question concerning Dr. Brown's testimony you are instructed as follows:

"That Dr. Brown's testimony is before you the same as all other evidence in the case for your consideration. You are the exclusive judges of the facts proved, of the credibility of the witnesses, and of the weight to be given to their testimony. Dr. Brown's testimony, like any other witness' testimony, should be weighed by you and may be rejected in whole or in part or accepted in whole or in part, and it is your province to place such construction on his testimony and give such effect to his testimony as you think same deserves.

"With reference to your second question you are instructed that the Court is not permitted under the law to specifically answer this question. Should you find the defendant guilty, it is your duty to assess such punishment as you, in your discretion, think proper, and you should not concern yourselves with the legal effect of your verdict or the judgment and sentence to be entered by the Court thereon in accordance with law.

s/ C. G. Dibrell
Presiding Judge"

The appellant says that under the authority of Pate v. Robinson, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966), Bush v. McCollum, 231 F.Supp. 560 (N. D.Tex.1964) affirmed 344 F.2d 672 (5 Cir., 1965), Hintz v. Beto, 5 Cir., 1967, 379 F.2d 937, and Greer v. Beto, 5 Cir., 1967, 379 F.2d 923, the refusal of the

State Court to appoint a psychiatrist and to conduct a psychiatric examination pursuant to the motion herein detailed and the doctor's testimony was a denial of due process and effective assistance of counsel. We cannot agree.

In *Pate*, supra, the issue of insanity at the time of the alleged offense and incompetency to stand trial were appropriately raised. Robinson "had a long history of disturbed behaviour" and had been committed to a psychopathic hospital after which his abnormal behaviour continued. Four witnesses expressed the opinion that he was insane. In *Bush*, supra, the defendant had previously been adjudged insane and that adjudication had never been vacated. *Hintz* had been committed by the county court to a Veterans Administration hospital as a mentally ill person on the certificate of two doctors that he was mentally ill. At the hospital he was diagnosed as a schizophrenic. *Greer* had "a long record of mental illness".

 It has been widely recognized that Pate v. Robinson does not create an absolute right to a psychiatric examination, Greer v. Beto, supra, Wilson v. Bailey, 4 Cir., 1967, 375 F.2d 663; Powell v. United States, 1966, 125 U.S.App. D.C. 364, 373 F.2d 225. The real issue to be resolved in cases such as this is whether the evidence presented to the trial judge is sufficient to raise a "bonafide doubt" as to the defendant's competence to stand trial, Pate v. Robinson, supra. In other words, there must be some indication to the trial judge that competency to stand trial is a *substantial issue* before a referral of the defendant to a psychiatric examination is required.

The minimum showing required for an examination must turn on the issue raised and the facts presented.

In Jacobs v. United States, 4 Cir., 1965, 350 F.2d 571, the testimony of lay witnesses to the effect that the defendant had been acting "peculiar" was sufficient for the Fourth Circuit to remand for the appointment of an independent psychiatrist, despite the government's production of a prison psychologist who testified that the defendant was competent upon his arrival at the prison. Similarly in United States v. Kendrick, 4 Cir., 331 F.2d 110, evidence that the defendant had been adjudicated insane in 1952 and that the adjudication had never been vacated, in conjunction with evidence of a long history of mental illness, was sufficient to require a competency hearing. See also Bush v. McCollum, supra. On the other hand it has been held that where the defendant was placed in a mental hospital five months before trial, but where he had never been adjudicated insane and had no long history of mental illness, there was no substantial doubt as to his competency to stand trial. Powell v. United States, 1966, 125 U.S.App.D.C. 364, 373 F.2d 225. Likewise in Wilson v. Bailey, 4 Cir., 1967, 375 F.2d 663, where the only indication of incompetence was the testimony at a post-conviction hearing of one of the defendant's two trial counsel who felt that the defendant was incompetent, no bona fide doubt was raised. In Hawks v. Peyton, 4 Cir., 1966, 370 F.2d 123, the defendant's lawyer testified as to the defendant's low mentality and the defendant testified that he could not remember the circumstances of the crime, and the court held that the state trial judge had not abused his discretion in refusing to order a psychiatric examination. The court pointed out that "a simple suggestion of mental deficiency is not enough to require deferment of the trial" for an examination, 370 F.2d at 125. This Court has recently held that the determination by a lunacy commission three months before the trial that a defendant was insane at the time of the offense and at the time of the inquiry nine months after the offense was sufficient to put the trial judge on notice that a separate competency determination should be made, Lee v. State of Alabama, 5 Cir., 386 F.2d 97 (June 27, 1967).

 In our opinion, it cannot successfully be maintained that denial of

the state court motion infringed Tyler's Constitutional rights. The motion did not pretend to say that Tyler was mentally incompetent at the time or that he had ever been so. It stated that he "is a person not legally accountable for the crime he is charged with" and supported that conclusion with averments to the effect that he was a moron, that he had not developed a normal intellect, that he was deficient in will power, and had been subject to the control and domination of persons near and about him. There was no allegation that Tyler had ever consulted a psychiatrist or been adjudged mentally incompetent or that he was insane at the time of the alleged offense or that he was insane at the time of the trial or that he was incapable of comprehending the nature of the charge or incapable of conferring with counsel or intelligently testifying in his own defense. There was no contention that he had not been able by reason of insanity to distinguish the difference between right and wrong at the time the jailer was killed.

It is contended, however, that when the doctor spoke to the judge that was sufficient. We note, nevertheless, that the judge did not proceed with callous indifference to the defendant's rights. The doctor did examine the defendant in chambers, in the presence of the judge and his counsel. The judge, of course, saw and heard the product of this examination. There is no evidence that after this occurred counsel asked for or needed further or additional examination. Then, when this appellant took the stand and gave his testimony before the Court below he offered not a single fact, occurrence, or episode in support of the idea that he might have been insane or incompetent either before or at the time of the state court trial. Nor was there any showing of such a condition in the twenty-five years which followed. In the context of this case we do not consider it necessary that we should begin fixing inflexible rules as to how long it takes a competent psychiatrist to examine a person who has no prior history of mental illness.

We do not ignore the fact that the jury stated that certain of its members were influenced against the death penalty by the doctor's testimony. The record does not show how many of the twelve were so influenced. We cannot speculate as to how many there were or as to the considerations which really prompted their opposition to the death penalty, which required a unanimous vote. The jurors informed the court that they were unanimously agreed on guilt and they subsequently agreed on the sentence.

It is further argued that Tyler had no opportunity intelligently to waive his right of appeal. In view of what has already appeared herein it would seem obvious that he must have been pleased and considerably relieved when the jury spared his life, leaving him with no desire to jeopardize that result in any new trial which might have been granted. The Court below heard appellant's testimony on this point and rejected it after comparing it with the solemn recitals of the judgment that, with the assistance of counsel, defendant waived his right to a motion for a new trial and requested immediate sentence, clinching the victory which his court appointed lawyers had won for him.

A solemn judgment which went unchallenged for twenty-five years should not now be set aside on the inadequate showing made in this record. Certainly we cannot say that the District Judge erred in denying relief.

The facts of this case inspire no urgency to lend credence to what Mr. Dooley once said:

"In England a man is presoomed to be innicent till he's proved guilty an' then they take it f'r granted he's guilty. In this counthry a man is presoomed to be guilty until he's proved guilty and after that he's presoomed to be innicent."[1]

Affirmed.

1. Quoted, Mayer, "The Lawyers", p. 186.

APPENDIX

ITEM 1

CRIMINAL DOCKET, 56th JUDICIAL DISTRICT COURT,
GALVESTON COUNTY

NO. 23,591

| Number of Case | Style of Case | Attorneys | Offense | Date of Filing |
|---|---|---|---|---|
| 23,591 | THE STATE OF TEXAS, State vs. Roland Tyler and Pete Callandra and Edward Francis Sutton, Defendant | C. H. Theobald, Co., Atty. | Murder, | July 7th, 1938. |

| Date of Orders | ORDERS OF COURT | Minute Vol. | Book Page |
|---|---|---|---|
| 10/4/38 | Case set for Monday Nov 7th 1938 & spl venire of 250 men ordered | 25 | 383 |
| 11/4/38 | Defendants Roland Tyler, Pete Callandra and Edward Francis Sutton each & all arraigned & each and all standing mute a plea of not guilty is entered for each Def. | 25 | 389 |
| 11/4/38 | All three defendants demand a severance & agree among themselves as to the order of their respective trials as follows — Sutton, first — Callandra Second & Tyler last. Severance granted. | 25 | 390 |
| 11/4/38 | The Sutton case having heretofore been set for Monday Nov 7th 1938 & Spl. venire ordered drawn & served. It is ordered that said setting stand. Callandra's case set for Monday Nov. 14th 1938 & Tyler case set Monday Nov. 21st 1938 & spl venire of 200 men ordered in each case. | 25 | 390 |
| 11/4/38 | It appearing that the Defendant Roland Tyler is without counsel of his own selection & is too poor to employ counsel John Austin Esq. is appointed to represent him. | 25 | 391 |

| Date of Orders | ORDERS OF COURT | Minute Vol. | Book Page |
|---|---|---|---|
| **Re: Sutton** | | | |
| 11-9-38 | Jury verdict of guilty on plea of not Guilty & punishment fixed at confinement in State Penitentiary for life. (As to Sutton) | 25 | 391 |
| **Re: Callandra** | | | |
| 11-6-38 | Jury verdict of Guilty on plea of not Guilty & Punishment fixed at confinement in State Penitentiary for a term of Fifty years (as to Callandra) | 25 | 392 |
| **In Re: Sutton** | | | |
| 11-19-38 | Defendant Edward Francis Sutton sentenced to serve an indeterminate period of confinement in state penitentiary of from two years to life. | 25 | 393 |
| **In Re: Callandra** | | | |
| 11-19-38 | Defendant Pete Callandra Sentenced to serve an indeterminate period of confinement in State Penitentiary of not less than two years nor more than Fifty years to run cumulative with sentence in Cause No. 23483. | 25 | 394 |
| **In Re: Roland Tyler** | | | |
| 11-21-38 | Defendants Motion to quash indictment overruled to which Defendant in open Court Excepts. | 25 | 395 |
| 11-22-38 | Motion of Defd for Court to appoint Psychiatrists to Examine Defd Refused. | 25 | 395 |
| 11-23-38 | Jury verdict of Guilty on plea of Not Guilty & punishment fixed at confinement in the Penitentiary for life. | 25 | 396 |
| 11-23-38 | Defendant in person in open Court upon advice & consent of his Counsel waives time for filing of Motion for new trial & right of appeal & request the immediate imposition of Sentence. | 25 | 396 |
| 11-23-38 | Defendant sentenced to serve an indeterminate period of confinement in the State Penitentiary of from two years to life. | 25 | 396 |

ITEM 2.

Wednesday, November 23, 1938
November 23, 1938
Murder

THE STATE OF TEXAS
 vs. NO. 23,591
ROLAND TYLER and PETE CALLANDRA
and EDWARD FRANCIS SUTTON

———•———

On this day the above entitled and numbered cause being called for trial, appeared the State by her County Attorney, and the defendant Roland Tyler also appeared in person and by counsel; and the defendant Roland Tyler having been heretofore duly arraigned, pleaded not guilty to the indictment. Whereupon, both parties having announced ready for trial, came a jury of good and lawful men, to-wit, H. A. Schocke and eleven others, who, having been selected, were duly impaneled and sworn, and who having heard the indictment read by the County Attorney, the defendant Roland Tyler's plea of not guilty thereto, the evidence submitted, the charge of the Court, and the argument of counsel, retired in charge of the proper officer to consider of their verdict. And afterwards they were again brought into open court by the proper officer and returned into said Court in due form of law, the defendant Roland Tyler and his counsel then and there being present, the following verdict, which was received by the Court and read by the Clerk, and is now here entered upon the Minutes of this Court, as follows, to-wit: "We, the jury, find the defendant guilty of murder with malice aforethought, as charged in the indictment, and assess his punishment at confinement in the penitentiary for life. (Signed) H. A. Schocke, Foreman." It is therefore considered and so ordered and adjudged by the Court that the defendant Roland Tyler is guilty of the offense of murder, as found by the jury, and that he be punished, as has been determined by the verdict of the jury, at confinement in the State Penitentiary for life.

Thereupon, the defendant Roland Tyler in person, in open court, requested that sentence be at once pronounced upon him in accordance with said jury verdict, and, in person, in open court, waived the time as well as his right so to do to file a motion for a new trial and in arrest of judgment. Whereupon the Court asked the said defendant Roland Tyler whether he had anything to say why said sentence should not be pronounced upon him, and he answered nothing in bar thereof. Whereupon the Court proceeded in the presence of the defendant Roland Tyler to pronounce sentence upon him as follows: It is the order of the Court that the defendant Roland Tyler, who has been adjudged to be guilty of the offense of murder, as found by the jury, and whose punishment has been assessed by the verdict of the jury at confinement in the State Penitentiary for life, be delivered by the Sheriff of Galveston County, Texas, immediately to the Manager of the Prison System of the State of Texas, or any other person legally authorized to receive such convicts, who shall convey the said defendant Roland Tyler to said penitentiary, there to be confined and imprisoned for an indeterminate period of from two (2) years to life imprisonment, in accordance with the provisions of the law governing the penitentiaries of this State. And the said defendant Roland Tyler is now remanded to jail until said Sheriff can obey the directions of this sentence.

ITEM 3.

IN THE DISTRICT COURT OF GALVESTON COUNTY,
TEXAS. 56th JUDICIAL DISTRICT.

THE STATE OF TEXAS
VS. NO. 23591.
ROLAND TYLER

TO THE HONORABLE JUDGE OF THE ABOVE SAID COURT:

———◆———

Now comes Henry Greenberg and John H. Austin, Attorneys, who were heretofore appointed by this Honorable Court to represent the defendant herein in the above styled and numbered cause and the trial thereof, and state that from their observation of the defendant and due investigation of him they are firmly of the belief and opinion that the defendant, Roland Tyler, is a person not legally accountable for the crime he is charged with for the following reasons.

### 1.

That defendant is now and has been in the past a person of moronic constitutionalism and that his intellectual development has at no time developed to a normal state.

### 2.

That the defendant is in fact of constitutional inferiority and has been such since reaching the age of about fifteen years of age.

### 3.

That defendant is a person of manifestly deficiency in will power; that he has not been capable of controlling his will and has, since reaching fifteen years of age, been subjected to the control and domination of persons near and about him.

Wherefore, by reason of defendant being too poor to obtain the necessary medical examination, counsel for defendant pray that this Honorable Court designate one or more reputable physicians who specialize in nervous, mental and psychiatry diseases and medicine to examine the defendant and to give their opinions to This Honorable Court as to the responsibility of the defendant for the offense he stands charged with herein.

s/ Greenberg & Austin
Greenberg and Austin
Attorneys for Defendant.

[24,348].

[PLFF. Ex. No. 1
C.A. 64–H–105
Jun. 9 1966 WHC]

GODBOLD, Circuit Judge (dissenting):

I respectfully dissent.

It is a violation of rights of constitutional dimension for a defendant charged with crime to be compelled to stand trial if he is not mentally competent to assist in his own defense. Pate v. Robinson, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966); Bishop v. United States, 350 U.S. 961, 76 S.Ct. 440, 100 L.Ed. 835 (1956) (per curiam); Bush v. McCollum, 231 F.Supp. 560 (N.D.Tex.1964), aff'd, 344 F.2d 672 (5th Cir. 1965); Greer v. Beto, 379 F.2d 923 (5th Cir. 1967); Hintz v. Beto, 379 F.2d 937 (5th Cir. 1967). If there is a "bona fide doubt" of defendant's competence, arising either before or during trial, the judge on his own motion must require a hearing. Pate v. Robinson, supra. The doubt need not be quickened by formal evidence; *inter alia,* defendant's demeanor

during trial is relevant, Pate v. Robinson, supra, as are statutory reports filed with the court for the information of the judge. Lee v. State of Alabama, 386 F.2d 97 (5th Cir. 1967).

I do not understand the majority to disagree with these principles, but to rest their conclusion on this issue, as did the district judge, on weight of the evidence. Somehow the evidence has become lost in the forest of Tyler's past criminal record, the nature of the charge, and the feeling of the majority that he was lucky to escape the death penalty. Constitutional protections are not reserved for good people and denied to bad, nor does competence to stand trial go by the board because the crime charged is serious.

Sufficiency of the evidence in this case is not correctly approached from the viewpoint of whether the trial judge upon a hearing on competency made an erroneous determination that the defendant was competent to stand trial or failed to take sufficient evidence on the issue of competency. Jacobs v. United States, 350 F.2d 571 (4th Cir. 1965); United States v. Davis, 365 F.2d 251 (6th Cir. 1966), and Powell v. United States, 125 U.S.App.D.C. 364, 373 F.2d 225 (1966) relied on by the majority, are cases of that nature. Correctly considered, the issue is whether the evidence raised a bona fide doubt so as to require the trial judge to hold a hearing. So viewed the evidence was more than adequate.

The Ninth Circuit phrases the question this way:

"But as Pate v. Robinson, supra, makes clear, the question here is not why counsel failed to request a competency hearing or why the court failed to hold one on its own initiative, but whether, no less on hindsight than by foresight, there were elements of such indication in the situation as, if proper notice had been taken of them, could present a substantial question of possible doubt as to White's competency to stand trial."

Rhay v. White, 385 F.2d 883, 886 (9th Cir. 1967).

The motion (Item 3, Appendix to majority opinion) filed by counsel on the second day of trial, and denied by the court, was not alone sufficient to raise a bona fide doubt, but it focused the court's attention on the question of competency.[1] The written inquiry made by the jury and quoted in the majority opinion is hardly mistakeable. The doubt in the mind of some of the jurors, caused by Dr. Brown's testimony, is expressly spelled out. The district court, and the majority, reach the anomalous conclusion that testimony sufficient to raise a doubt in the minds of jurors who did not have the benefit of the motion to focus them on the question was not sufficient to raise a bona fide doubt in the mind of the judge who had been put on notice by the motion and had denied it.

The issue of Tyler's credibility does not expunge the serious doubt revealed by the written record. If all that Tyler said is disbelieved the record still stands. But in passing it should be noted that the jury's inquiry substantiates Tyler's oral description of events at the trial.

The evidence of bona fide doubt was adequate. The trial court was required to hold a hearing to determine Tyler's competence to stand trial. It did not do so. Therefore, I dissent.

1. The majority misread the motion. It alleged in numerous particulars the existence of present mental infirmities, per-

manent in nature and not susceptible of change between time of offense and time of trial.