Joe Ed **HUDSON**, Petitioner,

v.

**STATE OF ALABAMA**, Respondent.

Civ. A. No. 4008–N.

United States District Court,
M. D. Alabama, N. D.

Aug. 7, 1973.

Edwin K. Livingston, Montgomery, Ala., for petitioner.

William J. Baxley, Atty. Gen. of Ala., Kent B. Brunson, Asst. Atty. Gen. of Ala., Montgomery, Ala., for respondent.

## ORDER

VARNER, District Judge.

This cause is now submitted for final determination upon the applications for writ of habeas corpus and upon all pleadings and evidence. Joe Ed Hudson filed two separate but related applications for writ of habeas corpus, said applications being considered together for the convenience of the parties and due to the relationship of said applications.

In the first application, Petitioner alleges that the sentences imposed upon him in Chilton County, Alabama (Circuit Court Case Nos. 7991 and 7992) on October 27, 1948, are unconstitutional in that (1) he was denied the effective assistance of counsel in connection with said convictions[1]; (2) he was refused counsel for preliminary hearing; and (3) he has been denied the right to appeal from an adverse ruling on a petition for writ of error coram nobis. While these sentences have been served, the Petitioner alleges that setting said sentences aside would reduce the amount of time left to be served on a Lowndes County sentence to which he is subject.

Second, Petitioner alleges that the sentence he is presently serving (25 years for the offense of robbery imposed by the Circuit Court of Lowndes County, Alabama, on September 17, 1951, in Case No. 573) is unconstitutional in that he was not represented by counsel at arraignment and in that he was denied the effective assistance of counsel at trial. The Petitioner began serving this sentence on February 28, 1970, after completing his Chilton County sentences.

The Court will first address itself to the Lowndes County conviction. Upon a thorough examination of the evidence, this Court is of the opinion that the Petitioner has failed to establish any facts which would entitle him to relief. The evidence shows that the Petitioner has received a full and adequate hearing in all phases thereof in State Court and that said Petitioner has not been denied any due process. The evidence reveals that said Petitioner appeared with counsel representing him and changed his plea from not guilty to guilty. This plea of guilty waived these defects which were not asserted to have induced the plea. Busby v. Holman, 356 F.2d 75, 77 (5th Cir. 1966).

The Court now turns its attention to the Chilton County cases. It was stipulated at the hearing in this Court that state remedies were exhausted, but the State insists that, since these sentences have been served, this Court has no jurisdiction to question the priority thereof.

It has long been recognized that a conviction and sentence may not be attacked where the allegedly invalid sentence has already been served. Diehl v. Wainwright, 423 F.2d 1108 (5th Cir.). The theory of such holdings is that the issue is moot since the sentence has been served and the petitioner cannot be rein-

1. Since Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), it has been clear that a defendant pleading guilty to a felony charge has a federal right to the assistance of counsel. See White v. Maryland, 373 U.S. 59, 83 S.Ct. 1050, 10 L.Ed.2d 193 (1963); Arsenault v. Massachusetts, 393 U.S. 5, 89 S.Ct. 35, 21 L.Ed.2d 5 (1968). It has long been recognized that the right to counsel is the right to the effective assistance of counsel. See Reece v. Georgia, 350 U.S. 85, 90, 76 S.Ct. 167, 100 L.Ed. 77 (1955); Glasser v. United States, 315 U.S. 60, 69–70, 62 S.Ct. 457, 86 L.Ed. 680 (1942); Avery v. Alabama, 308 U.S. 444, 446, 60 S.Ct. 321, 84 L.Ed. 377 (1940); Powell v. Alabama, 287 U.S. 45, 57, 53 S.Ct. 55, 77 L.Ed. 158 (1932).

stated to any right which he originally had. However, the law in this circuit appears to be that, where a petitioner serves consecutive sentences and the first sentence is found to be void, the second sentence must be construed to have commenced to run as of the date of imposition thereof or such other date as it would normally have commenced to run had the first sentence not been in effect. Johnson v. Henderson, 455 F.2d 983 (5th Cir.); Meadows v. Blackwell, 433 F.2d 1298 (5th Cir.). It would, therefore, appear that questions of constitutional impropriety of the first sentence could not be considered moot since they effect the time when the second sentence which the Petitioner is presently serving actually commenced to run.[2] This case falls within the rule of Cappetta v. Wainwright, 406 F.2d 238 (5th Cir. 1969), which decided that a district court has jurisdiction to pass on a prior conviction, even though the sentence has been completely served when the petition for habeas corpus is filed, if there is a definite relationship between the prior conviction and sentence and the sentence currently being served. See Diehl v. Wainwright, 423 F.2d supra at 1109. It appears to this Court that, if the Chilton County sentence is set aside, then the Lowndes County sentence must be considered to have commenced to run on the date of imposition thereof and that, therefore, the question of propriety of the Chilton County sentence is not moot, though that sentence has been served. The apparent improprieties of the Chilton County sentences, under these circumstances, are not cured by the completion of service of those sentences.

 The State insists that the Petitioner's delay in assertion of the errors, now insisted to be fatal to the two convictions, should defeat his claim. Delay in assertion of constitutional errors essentially involves at least two considerations: First, whether or not the delay effects a laches, waiver, estoppel, or some other legal cognizable reason for denying the relief; and, second, whether or not the delay, coupled with other aspects bearing on the weight of the evidence offered to prove the Petitioner's claim, effectively destroys the credibility of the evidence supporting the claim.

In regard to the credibility of a claim of constitutional improprieties alleged to have occurred in ancient trials, the Court in Dixon v. Caldwell, 471 F.2d 767 (5th Cir.), quotes the Court in Tyler v. Beto, 391 F.2d 993 (5th Cir.), that "credibility is for the trier of the facts and the uncontradicted testimony of a witness does not have to be accepted." However, that case makes it plain that such testimony must at least be considered. Considering that a convicted felon's credibility is basically suspect, the fact that the Petitioner has waited many years to file his claim may reasonably be argued to largely strip his claim of credibility. However, at first blush, the Petitioner's claims of constitutional error in Chilton County appear to be largely supported by the record.

The arraignment in these cases was on October 21, 1948, at which time said Petitioner pleaded not guilty. The trial of said causes was set for October 27, 1948, at which time the Petitioner renewed his not guilty plea. The jury then returned guilty verdicts in both cases. The record does not show that any evidence was presented by the State and, further, eleven of the jurors were the same in both cases. This sketchy record alone would, without more, make the defense attorney's competency questionable.

On August 9, 1965, a hearing was held on Hudson's writ of error coram nobis. While some aspects of the coram nobis hearing are confusing and uncertain, several factors are quite clear: (1) Mr. Hudson did not see his attorney until late Friday August 6, 1965. This was only two days before the hearing and

2. A "moot question" is defined by Ballentine's Law Dictionary, 3rd Edition, p. 814, as "a question which involves no right actually asserted and contested. 5 Am.J.2d A & E, § 762."

apparently little time was spent at this meeting; (2) Mr. Hudson requested several witnesses but the State did not assist him in obtaining said witnesses; (3) the evidence indicating that the State's attorney may have misdirected some of the defense witnesses. All of the above facts raise serious questions as to whether Mr. Hudson was afforded due process at the coram nobis hearing.

During the coram nobis hearing, Hon. Alvin B. Foshee testified on behalf of the State. Mr. Foshee was the County Solicitor for Chilton County during the time in question and assisted in the prosecution of the cases. Mr. Foshee testified that there was an agreement made between the attorneys and that said agreement was affirmed by the jury. The agreement was that Hudson would receive a total of 25 years for the two alleged crimes. Mr. Foshee further testified that he never heard Hudson agree to said arrangement but merely assumed that he did agree. However, Hudson testified in this Court that he did not consent to the agreement but rather insisted upon a trial because he was innocent. Mr. Hudson's mother also testified in this proceeding that she was with her son until he entered the courtroom and that she does not remember any discussion about an agreement and that her son insisted that he wanted a trial.

The record, if believed, shows that Petitioner was found guilty without trials on two cases in which he pleaded not guilty. Failure of his attorney to question this procedure without more would justify a conclusion that Petitioner was denied effective assistance of counsel. However, Mr. Foshee, the County Solicitor aiding in the prosecution, testified that defense counsel was one of the better criminal lawyers in the State and that the sentences were based upon an agreement between the Circuit Solicitor and the defense counsel, both of whom are now deceased.

This Court judicially knows that the statute proscribing robbery in Alabama places on the jury the discretion of setting the sentence and that the practice in disposing of uncontested cases in some circuits has been the following: The defendant would plead not guilty, but his lawyer or the solicitor would explain to the jury in the presence of the defendant that it was agreed that he was guilty and that a fair sentence would be a certain number of years; and that, so forearmed, the jury would retire and shortly thereafter report a verdict supporting the agreed finding of guilt and sentence. This appears to have been the practice in Chilton County, Alabama, at the time the Petitioner was sentenced. An understanding of this practice demonstrates why a competent lawyer should not object to a jury's finding his client guilty without any formal presentation of evidence, and it further demonstrates why the prisoner himself was so long mute under the circumstances. The Chilton County sentences were by consent.

As a result of the uncertainties and complicities of this proceeding, the Court will also consider the question of whether Petitioner's claim is, in any event, barred by laches, abandonment of rights, waiver or estoppel.

■ It has long been held by federal courts that delay alone is no bar to federal habeas corpus relief to correct jurisdictional and constitutional errors. Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837; Hamilton v. Watkins, 436 F.2d 1323 (5th Cir.).

■■ A claim of ancient impropriety may be found to be in bad faith if based on facts which have been "accessible at all times" to the petitioner. Price v. Johnston, 334 U.S. 266, 289, 68 S.Ct. 1049, 1062, 92 L.Ed. 1356; Sanders v. United States, 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148. It must be remembered that a convict seeking relief from an error committed years theretofore is often limited in legal skills and knowledge and that his failure of a timely assertion of his rights must be considered in the light of his probable inability to obtain adequate legal services.

"Most prisoners * * * are interested in being released as soon as possible; only rarely will one inexcusably neglect to raise all available issues" at his first known opportunity. 83 Harvard Law Review at 1153–1154.

In that light, Petitioner's delay in asserting his rights should not be attributed to any purposeful attempt to assure that possibly adverse evidence would be unavailable.

Courts have indulged every reasonable presumption against a waiver of a constitutional right and acquiescence in the loss of such a fundamental right is not to be presumed. Hamilton v. Watkins, supra, 436 F.2d at 1326; Johnson v. Zerbst, 304 U.S. 458 at 464, 58 S.Ct. 1019 at 1023, 82 L.Ed. 1461. However, it is not unreasonable to presume the propriety of trial proceedings based on the fact that those responsible for the propriety thereof, that is, the lawyers and the Judge, were generally better educationally and otherwise equipped to see to the propriety thereof and had a duty to do so. It was said in Tyler v. Beto, supra:

"A solemn judgment which went unchallenged for 25 years should not now be set aside on the inadequate showing made in this record."

However, this language in context appears in a case where the real issue was the propriety of a trial court's not granting a sanity hearing in a trial 25 years theretofore when the issue of insanity was not appropriately raised at the trial and the record demonstrated adequate reasons why it should not have been raised.

The weakness of delinquent claims of inadequacy of defense counsel has been recognized in this circuit by dicta in Chapman v. United States, 469 F.2d 634, 636–637, as recently as in 1972. In that case the court stated that:

"There is a duty imposed on defendants to notify the courts of an inadequacy in the assistance of counsel * * *" and the fact that four years had intervened "before Chap-

man advised the courts of his problem makes his position inherently suspect. Extended, unexplained silence may in certain circumstances amount to abandonment of one's rights."

Petitioner's claim may be suspect since he waited so long to question the propriety of a sentence without a trial.

The proposed amendment to the Federal Rules Governing Habeas Corpus Proceedings, Rule 9, in pertinent part, reads as follows:

"(a) DELAYED PETITIONS. A petition may be dismissed if it appears that the state of which the respondent is an officer has been prejudiced by delay in its filing unless the petitioner shows that it is based on grounds of which he had no earlier knowledge and of which he could not have had knowledge by the exercise of reasonable diligence before the circumstances prejudicial to the state occurred. If the petition is filed more than five years after the imposition of sentence, it shall be presumed that there is prejudice to the state."

The Advisory Committee note thereto discusses at length the problems associated with stale claims. A part of their discussion is as follows:

"The assertion of stale claims is a problem which is not likely to decrease in frequency. Following the decisions in Jones v. Cunningham, 371 U.S. 236 [83 S.Ct. 373, 9 L.Ed.2d 285] (1963), and Benson v. California, 328 F.2d 159 (9th Cir. 1964), the concept of custody expanded greatly, lengthening the time period during which a habeas corpus petition may be filed. The petitioner who is not unconditionally discharged may be on parole or probation for many years. He may at some date, perhaps ten or fifteen years after conviction, decide to challenge the state court judgment. The grounds most often troublesome to the courts are ineffective counsel, denial of right of appeal, plea of guilty unlawfully induced, use of a coerced confession, and illegally constituted jury. * * *

When they are asserted after the passage of many years, both the attorney for the defendant and the state have difficulty in ascertaining what the facts are. It often develops that the defense attorney has little or no recollection as to what took place and that many of the participants in the trial are dead or their whereabouts unknown. The court reporter's notes may have been lost or destroyed, thus eliminating any exact record of what transpired. If the case was decided on a guilty plea, even if the record is intact, it may not satisfactorily reveal the extent of the defense attorney's efforts in behalf of the petitioner. As a consequence, there is obvious difficulty in investigating petitioner's allegations.

"The interest of both the petitioner and the government can best be served if claims are raised while the evidence is still fresh. The American Bar Association has recognized the interest of the state in protecting itself against stale claims by limiting the right to raise such claims after completion of service of a sentence imposed pursuant to a challenged judgment. See ABA Standards Relating to Post-Conviction Remedies § 2.4(c), p. 45 (Approved Draft, 1968). Subdivision (a) is not limited to those who have completed their sentence. Its reach is broader, extending to all instances where delay by the petitioner has prejudiced the state, subject to the qualifications and conditions contained in the subdivision.

"In McMann v. Richardson, 397 U.S. 759 [90 S.Ct. 1441, 25 L.Ed.2d 763] (1970), the court made reference to the issue of the stale claim:

" 'What is at stake in this phase of the case is not the integrity of the state convictions obtained on guilty pleas, but whether, years later, defendants must be permitted to withdraw their pleas, which were perfectly valid when made, and be given another choice between admitting their guilt and putting the State to its proof.'

"The court refused to allow this, intimating its dislike of collateral attacks on sentences long since imposed which disrupt the state's interest in finality of convictions which were constitutionally valid when obtained.

"Subdivision (a) is not a statute of limitations. Rather, the limitation is based on the equitable doctrine of laches. 'Laches is such delay in enforcing one's rights as works disadvantage to another.' 30A C.J.S. Equity § 112, p. 19. Also, the language of the subdivision, 'a petition *may* be dismissed' [emphasis added], is permissive rather than mandatory. This clearly allows the court which is considering the petition to use discretion in assessing the equities of the particular situation.

"The use of a flexible rule analogous to laches to bar the assertion of stale claims is suggested in ABA Standards Relating to Post-Conviction Remedies § 2.4, commentary at 48 (Approved Draft, 1968). Additionally, in Fay v. Noia, 372 U.S. 391 [83 S.Ct. 822, 9 L.Ed.2d 837] (1963), the Supreme Court noted:

" 'Furthermore, habeas corpus has traditionally been regarded as governed by equitable principles. United States ex rel. Smith v. Baldi, 344 U.S. 561, 573 [73 S.Ct. 391, 97 L.Ed. 549] (dissenting opinion). Among them is the principle that a suitor's conduct in relation to the matter at hand may disentitle him to the relief he seeks.' 372 U.S. at 438 [83 S.Ct. 822].

" * * *

"The standard used for determining if the petitioner shall be barred from asserting his claim is consistent with that used in laches provisions generally. The petitioner is held to a standard of reasonable diligence. Any inference or presumption arising by reason of the failure to attack collaterally a conviction may be disregarded where (1) there has been a change of

law or fact (new evidence) or (2) where the court, in the interest of justice, feels that the collateral attack should be entertained and the prisoner makes a proper showing as to why he has not asserted a particular ground for relief."

The improprieties pleaded as to the Chilton County convictions are so basic that it strains credulity to believe that the Petitioner had no knowledge of the impropriety thereof or that he could not have had knowledge thereof by the exercise of reasonable diligence before the circumstances occurred (that is, the death of witnesses) which prejudiced the right of the state to have a hearing as to the circumstances of Petitioner's sentence or as to new trial of the Petitioner on the merits. This Court has studied the original pleadings and record in this case filed by the Petitioner himself and has observed the Petitioner in open court. There has been no suggestion that this Petitioner is not knowledgeable and learned in this field of the law. This Court finds the Petitioner to be highly intelligent and keenly aware of legal rights and remedies available to persons charged with or convicted of crimes.[3]

█ If the record and the Petitioner are believed, the Petitioner was sentenced in 1948 for two separate crimes to which he pleaded not guilty and for which he was never tried. In view of the fact that a now-deceased defense lawyer[4], the now-deceased judge, a county solicitor (Mr. Foshee who only sketchily remembered the case[5]), and a now-deceased circuit solicitor were present, the authenticity of the completeness of this record is highly improbable. Nonetheless, the apparent imperfections of the record as Petitioner explains them are so obvious that this Court finds that Petitioner has not been reasonably diligent in asserting his rights, that he has received the benefits of being sentenced to 15 years and ten years on two capital cases, that new trials of the cases even when the coram nobis proceeding was brought would have been impossible, and that Petitioner, therefore, is barred by laches from asserting his long-overlooked rights in this Court.

This Petitioner, having at least sanctioned by his silence for many years an agreement that he be sentenced on two capital cases to a minimum sentence of ten years[6] and a sentence of 15 years, find himself in a situation akin to that shared by the petitioners in McMann v. Richardson, supra, 397 U.S. at 769, 90 S.Ct. at 1448, wherein the Court states:

"As we said in Brady v. United States, 397 U.S. at 756–757, 90 S.Ct. at 1473–1474, 25 L.Ed.2d 747, the decision to plead guilty before the evidence is in frequently involves the making of difficult judgments. All the pertinent facts normally cannot be known unless witnesses are examined and cross-examined in court. * * * In the face of unavoidable uncertain-

---

3. Petitioner's adroit cross-examination of Mr. Foshee, after his court-appointed attorney had declined to do so (see pp. 31, 32 transcript of coram nobis hearing), is a characteristic demonstration of Petitioner's sophistication regarding legal niceties.

4. This defense lawyer and his partner were described by Mr. Foshee at the coram nobis hearing as being "about the ablest in this section of the State," and as being "capable, competent attorneys to represent him, at that time."

5. Mr. Foshee's testimony at the state coram nobis hearing was that the defense

attorney and the prosecutor in the presence of the defendant, Petitioner here, agreed on the sentences to be served by the defendant on his two capital cases. Mr. Foshee did not remember that the defendant himself ever openly articulated his agreement. Yet, there was no evidence that he articulated any disagreement.

6. Code of Alabama, Title 14, Section 415. "Any person who is convicted of robbery shall be punished at the discretion of the jury by death or by imprisonment * * * for not less than 10 years."

ty, the defendant and his counsel must make their best judgment as to the weight of the State's case. Counsel must predict how the facts, as he understands them, would be viewed by a court. If proved, would those facts convince a judge or jury of the defendant's guilt? * * * Questions like these cannot be answered with certitude; yet a decision to plead guilty must necessarily rest upon counsel's answers, uncertain as they may be. Waiving trial entails the inherent risk that the good-faith evaluations of a reasonably competent attorney will turn out to be mistaken either as to the facts or as to what a court's judgment might be on given facts.

"That a guilty plea must be intelligently made is not a requirement that all advice offered by the defendant's lawyer withstand retrospective examination in a post-conviction hearing. Courts continue to have serious differences among themselves * * *.

"In our view a defendant's plea of guilty based on reasonably competent advice is an intelligent plea not open to attack on the ground that counsel may have misjudged * * *. Whether a plea of guilty is unintelligent and therefore vulnerable * * * depends as an initial matter, not on whether a court would retrospectively consider counsel's advice to be right or wrong, but on whether that advice was within the range of competence demanded of attorneys in criminal cases. On the one hand, uncertainty is inherent in predicting court decisions; but on the other hand defendants facing felony charges are entitled to the effective assistance of competent counsel. Beyond this we think the matter, for the most part, should be left to the good sense and discretion of the trial courts with the admonition that if the right to counsel guaranteed by the Constitution is to serve its purpose, defendants cannot be left to the mercies of incompetent

counsel, and that judges should strive to maintain proper standards of performance by attorneys who are representing defendants in criminal cases in their courts."

In a somewhat similar situation in Brady v. United States, 397 U.S. 742, 757, 90 S.Ct. 1463, 1474, 25 L.Ed.2d 747 the Court stated:

"We find no requirement in the Constitution that a defendant must be permitted to disown his solemn admissions in open court that he committed the act with which he is charged simply because it later develops that the State would have had a weaker case than the defendant had thought or that the maximum penalty then assumed applicable has been held inapplicable in subsequent judicial decisions."

 The record is clear that, if the Petitioner did not think he had pleaded guilty, he at least tacitly agreed to the comparatively minimal sentences given him. He quietly went about service of these two sentences for some 17 years. This acquiescence by an intelligent prisoner for such a period, within itself, is indicative of the Petitioner's understanding of the procedures and of his agreement thereto. This Court finds that the Petitioner's plea was processed with the aid of competent counsel at the initial trial and that his constitutional rights were not violated. The Court finds no irregularity, under the circumstances of a consent situation, in the fact that the jurors for the hearing of both cases were for practical purposes the same individuals.

In the absence of valid constitutional objections to the initial hearing and sentence, no error in the State review processes could have been prejudicial to the Petitioner's rights. The State reviews will, therefore, not be reviewed by this Court.

The Petition for Writ of Habeas Corpus will, therefore, be denied.