Johnnie BARTLETT, Petitioner,

v.

UNITED STATES of America, Respondent.

No. 77–61–Civ–J–S.

United States District Court, M. D. Florida, Jacksonville Division.

Aug. 8, 1979.

Steven R. Heller, court-appointed, Jacksonville, Fla., for petitioner.

John E. Lawlor, III, Asst. U. S. Atty., Jacksonville, Fla., for respondent.

## OPINION

CHARLES R. SCOTT, Senior District Judge.

This matter is once again before the Court upon petitioner's Motion to Vacate Sentence, pursuant to § 2255 of Title 28 of the United States Code, filed January 21, 1977. Petitioner Johnnie Bartlett, a prisoner in the Atlanta Penitentiary, attacks his sentence of life imprisonment for first degree murder on a government reservation, imposed by a federal district court on January 13, 1942. An order to show cause was issued on March 18, 1977, requiring the United States to respond to the host of constitutional infirmities alleged to have occurred between arrest and the conclusion of trial. On June 7, 1977, this Court dismissed petitioner's motion based upon petitioner's thirty-five year delay in presenting his claims. The Court mistakenly concluded that Rule 9(a) of the *Rules Governing Section 2255 Proceedings* and the Fifth Circuit case law supported dismissal without an evidentiary hearing where petitioner's delay had prejudiced the government in its ability to substantiate or refute his claims. The Fifth Circuit Court of Appeals in *Bartlett v. United States,* 574 F.2d 1268 (5th Cir. 1978) reversed and remanded the case for an evidentiary hearing.[1]

Under the holding in *Powers v. United States,* 446 F.2d 22, 24 (5th Cir. 1971), petitioner is entitled to the opportunity to prove his allegations at an evidentiary hearing unless it conclusively appears that petitioner would not be entitled to relief, even if his factual allegations were true. That opinion also states, however, that petitioner must bear the burden of proving his allegations. Petitioner alleges violations of the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the Constitution. His numerous allegations are reducible to three major claims which are treated in this opinion: (1) that he was subjected to double jeopardy by separate trials conducted under military and federal authority for the same offense, (2) that he was the victim of a coerced and involuntary confession introduced against him at trial, and (3) that he was denied effective assistance of counsel. The Court finds that petitioner has failed to offer sufficient credible evidence to support any of these claims.

The Court finds itself in a situation similar to that in *Tyler v. Beto,* 391 F.2d 993 (5th Cir. 1968):

> In the lapse of time since the original murder conviction in the state court, more than a quarter of a century, all participants except the defendant himself have departed for their appearances before that errorless Court on High. The judge is dead and so is the prosecuting attorney; the two defense attorneys are dead and so is the clerk of the court. At this late date nothing remains but the official court records and the personal testimony of the petitioner, an oft convicted perpetrator of violent and deadly crime.

391 F.2d at 994. The Court of Appeals, in the course of its opinion, thereupon sustained the district judge's denial of the writ. In the instant case, too, the judges, attorneys, and witnesses involved in the case have either died, disappeared, or are unable to recall anything about the case. In addition, most of the records, military and civilian, pertaining to petitioner's 1942 conviction have been destroyed. What few

---

1. The Court of Appeals noted that Rule 9(a), which would have barred petitioner's claim, did not become effective until eleven days after petitioner filed his motion. Although prejudicial delay is a basis for dismissal without an evidentiary hearing in other circuits, that is not the rule in the Fifth Circuit. The Court of Appeals cited *Powell v. United States,* 446 F.2d 22 (5th Cir. 1971) as controlling on the issue.

records remain were offered in evidence by respondent at the evidentiary hearing. Petitioner offered only his own testimony.

From petitioner's testimony, newspaper accounts, and miscellaneous papers relating to the trial, the Court has constructed the following summary of uncontested facts. Ray Daniel Gordon, a sailor at the Naval Air Station in Jacksonville, Florida, was robbed and murdered while he slept in his bunk on October 13, 1941 (respondent's exhibits D, H). At that time Stewards Mates Third Class Johnnie Bartlett and his codefendant Nathan Artis were twenty-three years old (R 10, respondent's exhibit D). In the ensuing investigation, Naval officers and F.B.I. agents questioned petitioner, Artis, and others individually at the Naval Air Station (R 18, 24). At some point in the investigation Nathan Artis and petitioner both signed statements admitting to their guilt.[2] The two men were held in military confinement until a court martial was convened (R 15). The military proceeding, in which both men were represented by a Naval officer, resulted in undesirable discharge from the Navy (R 29–30). Thereafter, they were transferred to the Duval County Jail (R 31). The district court appointed two attorneys, M. H. Myerson and Dillon Hartridge, to represent petitioner and Nathan Artis, respectively, on December 11, 1941 (respondent's exhibit C). Charged with murder on a government reservation, petitioner was arraigned on December 18, 1941 (respondent's exhibits D and H). After jury selection, trial commenced on January 12 and terminated on January 13, 1942, with a jury verdict finding the two men guilty of murder in the first degree "without capital punishment" (respondent's exhibits D, E, F). Petitioner served eighteen years on his original sentence before his first parole in 1960. While on parole, however, petitioner was apparently convicted of aggravated assault by a state court in Pennsylvania and was incarcerated for ten years in that state before being returned to federal custody for parole violation (R 53–57). As of the date of the evidentiary hearing, petitioner was still serving time on his original sentence in the federal penitentiary in Atlanta, Georgia (R 57). In explanation of his delay in filing this motion, petitioner testified that he was unaware of his right to challenge his conviction and sentence until he received assistance from a fellow prisoner in 1977 (R 52).[3]

Petitioner's Fifth Amendment claim of double jeopardy is unsupported by the facts. At issue is the nature of the military proceeding. Federal courts have at least concurrent jurisdiction with military courts over violations of federal law. *Grafton v. United States,* 206 U.S. 333, 27 S.Ct. 749, 51 L.Ed. 1084 (1907). Although a conviction by court martial would preclude a subsequent conviction in civilian court for the same offense, punishment of a member of the armed forces by military court martial does not preclude subsequent prosecution in federal court for the same offense, if it violated federal law. *United States v. Walker,* 552 F.2d 566, 567 (4th Cir. 1977). The records of the military proceedings in this matter were long ago destroyed. As a result, the nature of these proceedings is uncertain. Although petitioner refers in his testimony to a trial by court martial (R 15), by his own testimony the only outcome of the proceedings was an undesirable discharge and subsequent transfer to the Duval County Jail (R 30–31). An undesirable discharge is in the nature of an administrative action rather than a criminal punish-

---

**2.** The Artis statement was placed in evidence (respondent's exhibit G), but petitioner's statement apparently no longer exists.

**3.** The petitioner testified:

THE WITNESS: Your Honor, to tell you the truth, I did not know anything like that could happen until I was brought back for parole violation in '77, 1977, and met some—chance meeting some guys and I told them that I had done twenty years on it and they were surprised, you know, by me looking young and everything and one of them said, you know, I shouldn't be doing no time. One of them took kind of an interest in me and tried to help me, you know, and he write down here for the court proceeding.

(R 52).

Petitioner also stated that he will not again be eligible for parole until 1982 (R 76).

ment, *see Pickell v. Reed,* 326 F.Supp. 1086 (N.D.Cal.1971), even though the effects of such a discharge may punish the individual in the civil sense of cutting off benefits to which he might otherwise have been entitled. A military proceeding that results only in a undesirable discharge does not suggest an adjudication that could form the basis for a successful claim of double jeopardy with respect to a charge of first degree murder.

Petitioner testified that F.B.I. and military authorities used coercion to obtain the confession which, he also claims, was the basis of his conviction (R 22–28). According to petitioner, he was interrogated for thirty to forty-five minutes in a room prepared for that purpose in the officers' quarters at the Naval Air Station (R 24). The interrogators had previously questioned Nathan Artis and others. Petitioner testified that the interrogators confronted him with their knowledge of his guilt and said that "if we didn't sign and plead guilty, there was going to be a hanging and get the electric chair and all that" (R 25). As a result of this threat, petitioner claims to have signed a written statement admitting his guilt, even though he maintained his innocence.[4] Petitioner has no recollection of any hearing on the admissibility of the confession and only dimly recalls having testified at trial (R 49–50).

■ The Court finds petitioner's unsupported testimony on the involuntary nature of his confession insufficient. Petitioner's evidence is flawed by his uncertain memory and by the conflict between his testimony and the newspaper accounts of the trial (respondent's exhibit D). These factors seriously undermine petitioner's credibility. This is not to say that this Court regards a newspaper article as an unerring source of the truth on factual matters.[5] In the instant case, however, the newspaper articles are among the few re-

maining records of what took place, and they raise significant issues of fact with respect to petitioner's credibility which this Court must resolve. One article reports that the trial judge heard testimony out of hearing of the jury concerning the voluntary nature of the statements signed by both defendants. Another purports to quote portions of petitioner's testimony at trial in which he admitted his guilt. While these articles do not contradict petitioner's account of his interrogation, neither do they bolster his credibility. The Court is not required to accept uncontradicted testimony of a witness as the truth, *Hawk v. Olson,* 326 U.S. 271, 66 S.Ct. 116, 90 L.Ed. 61 (1945); *Tyler v. Beto,* 391 F.2d 993, 995 (5th Cir. 1968), and it is not inclined to do so in the instant case.

■ Similar contradictions and inconsistencies mar petitioner's testimony concerning his claim of ineffective assistance of counsel. In support of this claim, petitioner alleges in his motion:

(a) that he was held for a long period of time by military authorities before being officially charged,

(b) that he was, in the interim, continuously questioned, and was not allowed to communicate with counsel until after he was charged with the offense,

(c) that he was confined in Duval County Jail without benefit of legal counsel,

(d) that he did not have benefit of counsel until thirty minutes before his trial began,

(e) that counsel did not take any statement of facts from him and failed to raise available defenses to the crime,

(f) that counsel failed to file pretrial motions, including a motion to suppress,

(g) that counsel failed to investigate the facts and did not act as an advocate for the defense,

---

4. See note 2 *supra* and R 24–25. Although petitioner claims to have consistently maintained his innocence, newspaper accounts purport to quote his testimony during trial admitting guilt (respondent's exhibit D).

5. Indeed, the newspaper articles are apparently in error with regard to petitioner's age at the time and concerning which counts of the indictment were finally submitted to the jury (R 10, respondent's exhibits D, E).

(h) that counsel failed to appeal the conviction despite petitioner's request, and

(i) that counsel failed to communicate with him after he was incarcerated despite petitioner's efforts to reach him.

In some instances petitioner's testimony contradicts or fails to substantiate the allegations contained in the motion. For example, petitioner's testimony flatly contradicts the allegation that he was continuously questioned while in custody (R 24). Also, petitioner's assertion that counsel failed to obey his request for an appeal seems oddly out of place in a motion filed thirty-five years after the opportunity for appeal has expired. Petitioner admits that the trial court made inquiry concerning whether he wished to appeal (R 50).

Respondent's evidence also casts doubt upon several of petitioner's allegations. It affirmatively appears that petitioner's counsel did raise the defense of intoxication to the element of specific intent in the crime (respondent's exhibits A, D, E, F). Also, the newspaper article which reported the trial court hearing on the admissibility of petitioner's confession suggests that petitioner's counsel did in fact challenge the government's use of the statement, albeit unsuccessfully (respondent's exhibit D).

The remainder of petitioner's assertions are neither rebutted nor supported by other evidence. Some, like the assertion that counsel failed to investigate and act as an advocate, are mere conclusions which this Court will not accept without supporting evidence. But more importantly, this Court is not persuaded of petitioner's willingness and ability to accurately recall the events surrounding his arrest and conviction. Reference has been made to petitioner's conflicting testimony concerning whether he testified at trial (R 43–50). In another instance petitioner testifies that he informed his attorney of three alibi witnesses, but is unable to remember their names (R 44–46).[6]

Even if the Court considered petitioner's testimony credible, there is significant evidence to the contrary concerning the effectiveness of his attorney. Both the order appointing counsel and the newspaper accounts of the trial refer to the defense attorneys as respected and experienced trial attorneys in the field of criminal law (respondent's exhibits C, D). The newspaper article reporting the trial court hearing on petitioner's confession has been mentioned previously. The minutes of the proceeding indicate that defense counsel sought directed verdicts on two of the three counts in the indictment (respondent's exhibit E). Defense counsel also sought and obtained a jury instruction on the effect of intoxication with respect to the element of specific intent in the crime (respondent's exhibits A, E). Finally, the verdict itself, rejecting capital punishment, is some evidence of the effectiveness of petitioner's court-appointed attorney (respondent's exhibits E, F).

Defendant's right to counsel in a criminal trial is a fundamental right essential to a fair trial. *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). The right to counsel includes the right to effective assistance, and denial entitles a criminal defendant to a writ of habeas corpus. *See Arsenault v. Massachusetts,* 393 U.S. 5, 89 S.Ct. 35, 21 L.Ed.2d 5 (1968); *Powell v. Alabama,* 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932). Petitioner, however, must show that the attorney's performance fell below the standard of reasonably effective assistance in the circumstances. *Herring v. Estelle,* 491 F.2d 125, 128 (5th Cir. 1974). Petitioner has failed to prove a violation of that standard on the basis of his unsupported testimony. *See, e. g., Rhodes v. Estelle,* 582 F.2d 972 (5th Cir. 1978). Furthermore, it may be well to recall that changes have occurred since 1942 regarding criminal procedure, the rights of the accused, and the tactics available to the defendant at trial. The Court cannot conclude on the basis of petitioner's unsup-

---

**6.** The minutes of the proceeding reflect that defense counsel did recall three witnesses to the stand (R 48–49).

ported testimony alone that the assistance he received was ineffective.

The story which petitioner attempts to tell in his motion is not implausible. The Court is mindful of the social conditions in 1942 that so often resulted in prejudice and discrimination against the members of racial minorities (petitioner is a Black man). The Court is also aware of petitioner's limited education. Against that background, the story of a confession coerced from the suspect by ruthless investigators followed by a quick trial in which the uneducated accused is represented by an unconcerned or inept defense attorney is surely not without precedent. But telling a story and proving a story are not the same thing. In this instance the effects of time have intervened to hinder both the proof and the rebuttal of petitioner's story. The harsh results of that delay must fall upon the teller of the story because it is he who bears the burden of proof. The writ of habeas will therefore be denied.