**UNITED STATES OF AMERICA, Plaintiff**

**v.**

**MELINDA RICE, a/k/a MELINDA EDWARDS, Defendants**

Crim. No. 1995-44

District Court of the Virgin Islands

Div. of St. Thomas and St. John

March 21, 1996

NELSON L. JONES, ESQ., Office of the United States Attorney, St. Thomas, Virgin Islands, *for Plaintiff*

CHARLES E. ENGEMAN, ESQ., (DUDLEY, TOPPER & FEUERZEIG), St. Thomas, Virgin Islands, *for Defendant*

MOORE, *Chief Judge*

## MEMORANDUM OPINION

This matter came on for hearing on March 13, 1996 on defendant's motion to dismiss the superseding indictment on double jeopardy grounds. For the reasons set forth below, the motion will be denied.

## FACTUAL AND PROCEDURAL BACKGROUND

On December 26, 1994, United States Customs officials detained Melinda Rice at the St. Thomas airport after a routine inspection of her suitcase uncovered cocaine. She was a private in the United States Army at the time, stationed at Fort Gordon, Georgia. After some questioning, she was allowed to proceed to Atlanta, Georgia, but customs officials in St. Thomas contacted military investigators at Fort Gordon and informed them that Rice had tried to clear U.S. Customs with cocaine.

At Fort Gordon, Rice met with Army investigators, signed a rights waiver certificate (DA Form 3881), and agreed to talk to them about her role in the incident at the St. Thomas airport. Army investigators placed her in protective custody after listening to her statement and consulting with the FBI and DEA because of her fears of retaliation by members of a drug smuggling ring known as the "Island Boys." She was later charged with violating Article

112a of the Uniform Code of Military Justice (UCMJ),[1] but she was never prosecuted by the Army for that offense. Nevertheless, based on Rice's confession, the confession of Brenna Nipper, a co-conspirator, and an investigation by Fort Gordon police, on January 4, 1995, Rice's commanding officer notified her that he would recommend that she be administratively discharged from the Army for misconduct — commission of a serious offense — pursuant to Chapter 14, 12-c, of Army Regulations 635-200.[2] The discovery of cocaine in her suitcase at the St. Thomas airport was cited as the reason for the discharge.[3]

Because she was in the Army for less than six years, Rice was not entitled to an administrative hearing, and she was summarily discharged from service. Her discharge characterized her service as "General — Under Honorable Conditions," which, as the Army admits, may subject her to "substantial prejudice in civilian life."[4] According to Rice, as a result of her discharge she is no longer eligible for veterans benefits, and she has lost her investment in the G.I. Army College Fund. Rice now contends that since she already has been "punished" by the Army for her conduct at the St. Thomas Airport by an administrative discharge, the Double Jeopardy Clause forbids her subsequent prosecution in this Court for the conduct described in the superseding indictment. The defendant relies primarily on *United States v. Halper*, 490 U.S. 435, 104 L. Ed. 2d 487, 109 S. Ct. 1892 (1989), and its progeny as support for this proposition.

The United States does not dispute that the United States and the U.S. Army are the same sovereign; nor does it dispute that Rice's conduct at the St. Thomas Airport formed the basis both for her discharge and the charges in the superseding indictment. Thus, the only question for consideration is whether Rice's administrative

---

[1] 10 U.S.C. § 912a.

[2] *See* 32 C.F.R. § 41, App. A — Standards and Procedures, Part 1 ¶ K(1)(3). Of the three types of disciplinary proceedings used by the military (court-martial, Article 15 discipline, and administrative discharge), the administrative discharge proceedings is least time consuming and the consequences are least severe.

[3] Although Rice had not yet been indicted in this Court for the incident at the St. Thomas Airport, the United States Attorney informed Fort Gordon investigators that an indictment would be forthcoming. The indictment was filed on February 16, 1995.

[4] Army Form ATHZ-TB-C-447 (635-200a).

discharge from the Army was punishment for double jeopardy purposes.

## DISCUSSION

The Double Jeopardy Clause of the Fifth Amendment provides, "nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb. . . ." U.S. CONST. amend. V.[5] Once jeopardy attaches, this clause protects criminal defendants in three ways: "It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." *North Carolina v. Pearce*, 395 U.S. 711, 717, 23 L. Ed. 2d 656, 89 S. Ct. 2072 (1969). As the United States Supreme Court explained only recently: "These protections stem from the underlying premise that a defendant should not be twice tried or punished for the same offense." *Schiro v. Farley*, 127 L. Ed. 2d 47, — U.S. —, —, 114 S. Ct. 783, 789 (1994).

In *Halper*, the Supreme Court broadened the concept of punishment for double jeopardy purposes to include civil sanctions that cannot "fairly be characterized as remedial, but only as a deterrent or retribution." *Halper*, 490 U.S. 435, 449, 104 L. Ed. 2d 487, 109 S. Ct. 1892. *Halper* eschewed the formal labels attached to a proceeding in favor of a "particularized assessment of the penalty imposed and the purposes that the penalty may fairly be said to serve." *Id.* at 448. In two subsequent cases, the Court reaffirmed its holding in *Halper* and extended *Halper's* analysis to civil forfeitures, *Austin v. United States*, 125 L. Ed. 2d 488, 509 U.S. 602, 113 S. Ct. 2801 (1993), and to a tax on the possession of illegal drugs. *Montana Dept. of Rev. v. Kurth Ranch*, 128 L. Ed. 2d 767, — U.S. — , 114 S. Ct. 1937 (1994). In *Austin*, the Court concluded that a civil forfeiture under 21 U.S.C. §§ 881(a)(4) and (a)(7) may constitute punishment within the meaning of the Excessive Fines Clause of the Eighth Amendment. *Austin*, — U.S. at — , 113 S. Ct. at 2812. In *Kurth Ranch*, the Court recognized that a tax imposed on confiscated drugs follow-

---

[5] Congress has extended the Double Jeopardy Clause to the Virgin Islands via the Revised Organic Act of 1954, ch. 558, § 3, 68 Stat. 497 (1954) (codified as amended at 48 U.S.C. § 1561).

ing the defendant's conviction for the same drug offense was punitive and therefore violative of the Double Jeopardy Clause. *Kurth Ranch*, — U.S. at — , 114 S. Ct. at 1948.

The defendant correctly argues that these recent cases mandate a fresh look at certain practices by the state that hitherto nave been thought to be constitutionally unassailable. But a common thread unites *Halper, Austin*, and *Kurth Ranch* and separates them from this case. In each of those cases the evil complained of was a monetary sanction imposed by the state in the form of a civil fine, civil forfeiture or tax. As the Court observed in *Kurth Ranch*:

Criminal fines, civil penalties, civil forfeitures, and taxes all share certain features: They generate government revenues, impose fiscal burden on individuals and deter certain behavior. All of these sanctions are subject to constitutional constraints.

*Kurth Ranch*, — U.S. at — , 114 S. Ct. at 1945.

 The Chapter 14 administrative discharge at issue here is markedly different from he civil sanctions imposed in *Halper, Austin*, and *Kurth Ranch*: it is not a monetary penalty designed to generate revenue for the government. The primary purpose of the administrative discharge procedures under Chapter 14 is "to promote the readiness of the Military Services by maintaining high standards of conduct and performance." 32 C.F.R. § 41.3(a). It is not at all designed to generate revenue for the government. And while a Chapter 14 discharge does impose fiscal burdens on the dischargee and may deter others from similar conduct, these are unavoidable consequences of administrative discharges generally and are only tangentially related to their primary purpose. More importantly, as *Halper* emphasized, whether a sanction constitutes punishment cannot be determined from the defendant's perspective, since "even remedial sanctions carry the sting of punishment." *Halper*, 490 U.S. at 447 n.7. That the defendant may have suffered some pecuniary loss is not determinative.

██ ██ The Court has not found, and the defendant has not shown us, a single case which holds that a Chapter 14 administrative discharge, or any other type of administrative separation, constitutes punishment for double jeopardy purposes. Indeed,

military discharge cases decided before *Halper* have gone the other way.[6] And in the non-military context, courts have been unwilling to extend the Double Jeopardy Clause to administrative-type proceedings.[7] The Court has found only one post-*Halper* decision that has squarely considered whether an administrative discharge from military service is punishment for double jeopardy purposes. *United States v. Smith*, 912 F.2d 322 (9th Cir. 1990). In that case the court found that a Chapter 10 administrative "Discharge for the Good of the Service" was non-punitive, and the Double Jeopardy Clause did not apply. *Id.* at 324. Although the reasoning might have beer altered in the *Smith* case, *Kurth Ranch* does not mandate a contrary result.

We are not persuaded that *Halper's* analysis applies to a Chapter 14 military discharge, and we cannot agree that the defendant's discharge was punishment for double jeopardy purposes. To extend *Halper's* insights to a Chapter 14 administrative discharge, an entirely distinct category of civil sanctions, would undoubtedly give the Double Jeopardy Clause a "breadth of effect it [has] never before enjoyed." *See Kurth Ranch*, — U.S. at — , 114 S. Ct. at 1957 (Scalia, J., dissenting).

■ Even if we were to find that the administrative discharge in question was punishment for double jeopardy purposes, we nevertheless would deny the defendant's motion to dismiss since "an accused must suffer jeopardy before he can suffer double jeopardy." *Serfass v. United States*, 420 U.S. 377, 393, 43 L. Ed. 2d 265, 95 S. Ct. 1055 (1975). Because the Chapter 14 administrative discharge was not the "functional equivalent" of a criminal prosecution, Rice was never placed at risk, and jeopardy did not attach. A recent ruling by the Court of Appeals for the Third Circuit

---

[6] *Bartlett v. United States*, 475 F. Supp. 73, 76 (M.D. Fla. 1979) (holding that an administrative discharge resulting from a court martial was not punishment); *see United States v. Williams*, 12 M.J. 1038, 1039 (A.C.M.R. 1982) (finding that double jeopardy did not bar court-martial following Chapter 14 administrative discharge proceeding); *cf. United States v. Fretwell*, 29 C.M.R. 193, 195 (C.M.A. 1960) (finding that non-judicial punishment under Article 15 did not raise double jeopardy concerns).

[7] *See, e.g., United States v. Whitney*, 649 F.2d 296, 298 (5th Cir. 1981) (holding that Double Jeopardy Clause does not apply to parole or probation revocation proceedings); *United States v. Bizzell*, 921 F.2d 263, 266 (10th Cir. 1990) (finding that Double Jeopardy Clause did not apply to administrative of debarment proceeding).

provides much guidance. *United States v. Baird*, 63 F.3d 1213, 1219 (3d Cir.), *reh'g denied*, 63 F.3d 1227 (3d Cir. 1995), *cert. denied*, — U.S. — , 116 S. Ct. 909 (1996). In *Baird*, the court held that jeopardy did not attach to a non-judicial, administrative forfeiture proceeding because the defendant was never placed at risk of a determination of guilt. *Id.* at 1219.

> *Halper* did not remove from the double jeopardy claimant's shoulders the burden of establishing a former jeopardy. A post-*Halper* double jeopardy claimant . . . cannot prevail merely upon a showing that he or she has been once punished for the same offense by the same sovereign. Rather, the post-*Halper* double jeopardy claimant must also show that the initial punishment was meted out during the course of a prior proceeding having the "functional equivalence of a [prior] criminal prosecution that placed the [claimant] in jeopardy . . . 'for the same offence.'"

*Id.* (citing *Kurth Ranch*, — U.S. at — , 114 S. Ct. at 1948.)

■■ Rice's Chapter 14 administrative discharge bore no resemblance to a criminal prosecution. In fact, there never was an adjudication of guilt. There was no hearing; Rice was not allowed to cross-examine or call witnesses in her defense. Based on a preliminary investigation by military police, Rice's own confession, and the confession of a co-conspirator, Rice's commanding officer unilaterally recommended her discharge on January 4, 1995, less than two weeks after the events at the St. Thomas Airport. The actions of Rice's commanding officer were more akin to a finding of probable cause by a magistrate than to an adjudication of guilt by a jury.[8] "Without risk of a determination of guilt, jeopardy does not attach, and neither an appeal nor further prosecution constitutes double jeopardy." *Serfass*, 420 U.S. at 388.

In sum, whatever the precise contours of the Double Jeopardy Clause after *Halper* and *Kurth Ranch*, it is not so malleable as to include the administrative discharge at issue in this case. Accord-

---

[8] In fact, Rice's discharge was merely for commission of a serious offense, not for **conviction** on a civilian offense. *See* 32 C.F.R. § 41, App. A.

ingly, the defendant's motion to dismiss will be denied.[9] A separate order follows.

DATED this 21st day of March, 1996.

## ORDER

Upon consideration of the premises, the Court being duly advised, and for the reasons set forth in the Memorandum of even date, it is hereby

ORDERED that defendant Melinda Rice's motion to dismiss the superseding indictment on double jeopardy grounds is DENIED.

DATED this 21st day of March, 1996.

---

[9]The unprecedented expansion of the Double Jeopardy Clause urged by the defendant "would [also] create an insuperable obstacle to the administration of justice in many cases in which there is no semblance of the type of oppressive practices at which the double-jeopardy prohibition is aimed." *Wade v. Hunter,* 336 U.S. 684, 688-89, 93 L. Ed. 974, 69 S. Ct. 834 (1949). If jeopardy attached to an administrative discharge proceeding, for instance, the military potentially would be precluded from discharging a member previously convicted of a federal offense in a civilian court, since the subsequent discharge proceeding would place the member at risk. By the same token, a federal employee administratively discharged for misappropriation of federal funds would be immune from subsequent prosecution by the United States.