

1997 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-17-1997

# United States v. Rice

Precedential or Non-Precedential:

Docket 96-7213

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1997

Recommended Citation

"United States v. Rice" (1997). *1997 Decisions.* Paper 64.
http://digitalcommons.law.villanova.edu/thirdcircuit_1997/64

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1997 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 96-7213
_____


UNITED STATES OF AMERICA

v.

MELINDA RICE
a/k/a MELINDA EDWARDS

                         Melinda Rice,
                              Appellant


_____

On Appeal from the District Court of the Virgin Islands
          Division of St. Thomas and St. John
          (D.C. Criminal No. 95-cr-00044-2)
          _____

          Argued December 12, 1996

   Before:  SCIRICA, NYGAARD and McKEE, Circuit Judges

          (Filed March 17, 1997)

          CHARLES E. ENGEMAN, ESQUIRE (ARGUED)
          Dudley, Topper and Feuerzeig Law House
          1A Frederiksberg Gade
          Charlotte Amalie, St. Thomas
          U.S. Virgin Islands 00804

          Attorney for Appellant


          AUDREY L. THOMAS-FRANCIS, ESQUIRE (ARGUED)
          Office of the United States Attorney
          United States Courthouse, Suite 260
          5500 Veterans Drive
          Charlotte Amalie, St. Thomas
          U.S. Virgin Islands 00802

          Attorney for Appellee

SCIRICA, <u>Circuit</u> <u>Judge</u>.

The issue on appeal is whether a general discharge under honorable conditions from the United States Army for cocaine possession bars a subsequent federal criminal prosecution on double jeopardy grounds.

## I.  Facts and Procedural History

On December 26, 1994, Melinda Rice, a private in the United States Army, attempted to clear United States customs at the Cyril E. King airport in St. Thomas, U.S. Virgin islands, <u>en route</u> to the United States.  During a routine inspection, a customs agent asked Rice to open a package in her suitcase.  The package contained 7.5 lbs. of cocaine.  Rice's companion at the airport, Teddy Lorenzo Bryan, claimed ownership of the cocaine.  After a brief detention, Rice was permitted to travel to her base at Fort Gordon, Georgia.  But customs officials informed military investigators at Fort Gordon that Rice had attempted to clear U.S. customs with cocaine.

The Army's Criminal Investigation Division conducted an investigation.  After Rice provided the Army with information about the "Island Boys," a narcotics smuggling ring, the Army charged her with violating Article 112a of the Uniform Code of Military Justice.[1]  But Rice was never prosecuted.  Instead,

─────────────

1.   Art. 112(a) of the Uniform Code of Military Justice, 10 U.S.C. § 912(a), provides: "Any person subject to this chapter who wrongfully uses, possesses, manufactures, distributes,

Rice's commanding officer recommended her discharge from the Army in accordance with 32 C.F.R. Part 41 and Chapter 14, 12-C of Army Regulation AR 635-200. The commanding officer made this recommendation because there was "substantial evidence" that Rice had engaged in drug possession and drug smuggling activities. Since Rice had served in the army for less than six years, she had no right to an administrative discharge hearing. 32 C.F.R. Part 41, App. A, Part 2(B)(1)(g). Although Rice was given an opportunity to submit a written statement to her commanding officer, she declined to do so. Rice received a "General Discharge (Under Honorable Conditions)." As a result of her discharge, Rice forfeited her G.I. College Fund investment worth $1200, her Civilian Service Retirement Credit, and her vested interest in the Army's retirement plan.

In April 1995, the United States Attorney for the Virgin Islands indicted Rice for conspiracy to distribute cocaine, possession with intent to distribute cocaine, and attempt to import cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 952(a) and 963. Rice filed a motion to dismiss her indictment on double jeopardy grounds, claiming her general discharge was punishment and the functional equivalent of a criminal prosecution barring subsequent prosecution for the same

(..continued)
imports into the customs territory of the United States, exports from the United States, or introduces into an installation, vessel, vehicle, or aircraft used by or under the control of the armed forces a substance described in subsection (b) shall be punished as a court-martial may direct." Cocaine is one of the substances enumerated in subsection (b).

offense.  The government argued the general discharge was not punishment because it was remedial in nature.

The district court denied Rice's motion, finding her Chapter 14 general discharge did not constitute punishment for double jeopardy purposes.  Even if the discharge were punishment, the court held jeopardy had not attached during Rice's administrative discharge proceeding. United States v. Rice, 919 F. Supp. 183 (D.V.I. 1996).  This interlocutory appeal followed.  The district court stayed the trial pending appeal.

## II.  Jurisdiction and Standard of Review

The district court had jurisdiction under 48 U.S.C. § 1612.  We have jurisdiction under 28 U.S.C. § 1291 and the collateral order doctrine.  United States v. Baird, 63 F.3d 1213 (3d Cir. 1995), cert. denied, 116 S. Ct. 909 (1996).  Our review of a double jeopardy claim is plenary.  United States v. Various Computers and Computer Equipment, 82 F.3d 582 (3d Cir.), cert. denied, 117 S.Ct. 406 (1996); United States v. Baird, 63 F.3d 1213 (3d Cir. 1995).

## III.  Discussion

### A.

In this appeal we must decide whether, under the Double Jeopardy Clause, Rice's general discharge under honorable conditions from the Army for misconduct prohibits a subsequent federal criminal prosecution predicated on the same acts.

The Double Jeopardy Clause of the Fifth Amendment provides, "No person shall . . . be subject for the same offense to be twice put in jeopardy of life or limb."  U.S. Const., Amdt.

4

5. The Clause serves the function of preventing both "successive punishments and . . . successive prosecutions." United States v. Ursery, __ U.S. __, 116 S. Ct. 2135, 2139 (1996) (quoting United States v. Dixon, 509 U.S. 688, 696 (1993)); Witte v. United States, __ U.S. __, 115 S. Ct. 2199, 2204 (1995) (same). "The protection against multiple punishments prohibits the government from punishing twice, or attempting a second time to punish criminally for the same offense." United States v. Ursery, __ U.S. __, 116 S. Ct. 2135, 2139-40 (1996) (quoting Witte v. United States, __ U.S. __, 115 S. Ct. 2199, 2204 (1995)).

Rice contends the Double Jeopardy Clause's prohibition against successive punishments bars her prosecution under federal narcotics laws because she has already been punished for the same acts by the same sovereign. This argument has been rejected by two federal courts in cases involving similar administrative discharges. See United States v. Smith, 912 F.2d 322 (9th Cir. 1990) (discharge for good of the service under less than honorable conditions is not punishment under the Double Jeopardy Clause); Bartlett v. United States, 475 F. Supp. 73 (M.D. Fla. 1979) ("undesirable discharge" does not preclude subsequent criminal prosecution for same offense). As the Court of Appeals for the Ninth Circuit explained in Smith, a discharge for the good of the service "is administrative and non-punitive. No double jeopardy concern is raised when the first proceeding threatens a civil sanction rather than a loss of liberty." Smith, 912 F.2d at 324 (citations omitted).

The United States Supreme Court has held that in some circumstances, a civil sanction may constitute punishment within the meaning of the double jeopardy clause. See United States v. Halper, 490 U.S. 435 (1989), Department of Revenue of Montana v. Kurth Ranch, 511 U.S. 767 (1994), and United States v. Ursery, __ U.S. __, 116 S. Ct. 2135 (1996). Rice contends these holdings support her claim that a general discharge is punishment, barring subsequent prosecution by the same sovereign. We agree these cases have recast the analysis of civil sanctions under the Double Jeopardy Clause. But we do not believe they compel a different outcome than Smith and Bartlett.

**B.**

In United States v. Halper, 490 U.S. 435 (1989), the Supreme Court held a civil sanction that "cannot fairly be said solely to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes," is punishment for double jeopardy purposes. Id. at 448. The court ruled that a $130,000 civil penalty for fraud bore no rational relationship to the remedial goal of compensating the government for its loss of $16,000. Since Halper had already been punished for his acts by a criminal fine and prison sentence, the subsequent imposition of a civil fine violated the Double Jeopardy Clause's prohibition against successive punishments.

The approach in Halper was extended in Department of Revenue of Montana v. Kurth Ranch, 511 U.S. 767 (1994). In Kurth Ranch, the Court held that a $181,000 state tax on persons

6

arrested for drug possession and distribution had an "unmistakable punitive character" and "was fairly characterized as punishment." Id. at 783-84. For this reason, imposition of the tax following criminal conviction and sentencing constituted an impermissible second punishment.

In United States v. Ursery, __ U.S. __, 116 S. Ct. 2135 (1996), the Supreme Court returned to the problem of civil sanctions as punishment. In Ursery, the Court applied a two-part test to determine whether two federal statutory forfeiture provisions constituted punishment for Double Jeopardy purposes. The Court first looked to congressional intent to determine whether Congress intended the provisions to be civil and remedial or criminal and punitive. Ursery, 116 S. Ct. at 2142, 2147 (1996) (citing United States v. One Assortment of 89 Firearms, 465 U.S. 354, 363 (1984)). The Court concluded Congress intended the forfeitures to be civil proceedings, because the proceedings were in rem, the statutes in question referred to "civil forfeiture," and the procedural rules and burdens of proof were civil in character. Ursery, 116 S. Ct. at 2147-48.

Second, the Court examined whether the statutory scheme was so punitive in purpose, effect, or fact as to negate Congress' intention to establish a civil remedy. Ursery, 116 S. Ct. at 2147-48 (1996). A defendant must establish by the "clearest proof" that the government has provided a sanction so punitive as to transform what was clearly intended as a civil remedy into a criminal penalty. Ursery, 116 S. Ct. at 2142 (1996) (quoting 89 Firearms, 465 U.S. 354, 366 (1984)). The

7

Court held there was little evidence, let alone clear proof, the statute was punitive in "form or effect." <u>Ursery</u>, 116 S. Ct. at 2148. Although recognizing one of the statutes, authorizing forfeiture of property used in the commission of a drug felony, had "certain punitive effects," the Court noted it served important nonpunitive goals because it encouraged property owners to take care in managing their property, ensured that owners would not permit their property to be used for illegal purposes, and, in some circumstances, might abate a nuisance. The Court believed the other statute, authorizing forfeiture of property involved in illegal money-laundering transactions, served these same remedial purposes as well as "the additional nonpunitive goal of ensuring that persons do not profit from their illegal acts." <u>Id</u>. at 2148-49. For these reasons, the Court concluded the forfeiture statutes did not impose punishment within the meaning of the Double Jeopardy Clause.[2]

---

2. The Court also considered four additional factors. First, the Court noted "<u>in rem</u> civil forfeiture has not historically been regarded as punishment, as we have understood that term under the Double Jeopardy Clause." <u>Id</u>. at 2149. Second, the statutes possessed no scienter requirement aside from an "innocent owner exception." <u>Id</u>. Third, the Court noted though both forfeiture statues "may fairly be said to serve the purpose of deterrence, we long have held that this purpose may serve civil as well as criminal goals." <u>Id</u>. Finally, the Court observed "though both statutes are tied to criminal activity . . . this fact is insufficient to render the statutes punitive," for "[i]t is well settled that 'Congress may impose both a criminal and a civil sanction in respect to the same act or omission.' By itself, the fact that a forfeiture statute has some connection to a criminal violation is far from the 'clearest proof' necessary to show that a proceeding is criminal." <u>Id</u>. (citation omitted, quoting <u>Helvering v. Mitchell</u>, 303 U.S. 391, 399 (1938).

It is clear therefore that in some circumstances, a civil sanction may constitute punishment for double jeopardy purposes.  We believe Ursery provides the appropriate test here.  To determine whether Rice's administrative discharge was punishment for double jeopardy purpose, we must examine the (1) intent and (2) purpose or effect of the relevant administrative discharge regulations.[3]

## C.

Application of the Ursery test demonstrates Rice's general discharge was not punishment and the federal government's prosecution does not violate the Double Jeopardy Clause.

10 U.S.C. § 1169 authorizes the Secretary of Defense and branch Secretaries to prescribe regulations governing discharge of regular enlisted personnel from the armed forces

---

3.   Before Ursery, we adopted a three-part test of actual purpose, objective purpose, and effect to determine whether a government sanction is punishment.  See Artway v. Attorney General of State of N.J., 81 F.3d 1235, 1263 (3d Cir. 1996).  The Artway court noted: "We have thus attempted to harmonize a body of doctrine that has caused much disagreement in the federal and state courts.  We realize, however, that our synthesis is by no means perfect.  Only the Supreme Court knows where all the pieces belong.  The Court will, we hope, provide more guidance with its decision in . . . some other case in the near future." Artway, 81 F.3d at 1263.  Artway represented an excellent and strongly reasoned attempt to interpret a complex line of Double Jeopardy cases.  Shortly thereafter, the Supreme Court decision in Ursery provided the guidance we sought in Artway by clarifying the proper test to be applied to determine whether a government sanction is punishment under the Double Jeopardy Clause.  In Taylor v. Cisneros, 102 F.3d 1334 (3d Cir. 1996), we speculated as to the extent to which Ursery rendered the Artway test "overinclusive," but declined to reach a firm conclusion.  Because the Artway test is similar in most respects to the test adopted by the Court in Ursery, we would reach the same result under either test.

before expiration of their term of service.[4]  Under that authorization, the Secretary of Defense promulgated 32 C.F.R. Part 41, "Enlisted Administrative Separations," which establishes the standards and procedures the Army followed in Rice's general discharge.  Analysis of 32 C.F.R. Part 41 demonstrates that when the federal government created its scheme of armed service administrative discharges for regular enlisted personnel, it intended to establish a remedial and civil, not criminal or punitive, sanction.

The Secretary of Defense promulgated 32 C.F.R. part 41 to promote:
the readiness of the Military Services by providing an orderly
            means to:
(1)      Ensure that the Military services are served by
                individuals capable of meeting required standards
                of duty performance and discipline;
(2)   Maintain standards of performance and conduct through
                characterization of service in a system that
                emphasizes the importance of honorable service;
(3)   Achieve authorized force levels and grade distributions; and
(4)      Provide for the orderly separation of enlisted
                personnel in a variety of circumstances.

32 C.F.R. Part 41 § 41.3(a).  The regulations also provide:

Enlisted members who do not demonstrate potential for further
            military service should be separated in order to avoid
            the high costs in terms of pay, administrative efforts,
            degradation of morale, and substandard mission
            performance that are associated with retention of
            enlisted members who do not conform to required
            standards of discipline and performance despite efforts
            at counseling, retraining, or rehabilitation.

---

4.    10 U.S.C. § 1169 provides: "No regular enlisted member of an armed force may be discharged before his term of service expires, except -- (1) as prescribed by the Secretary concerned; (2) by sentence of a general or special court martial; or (3) as otherwise provided by law."

32 C.F.R. Part 41 § 41.3(b)(3). It is clear the remedial goals underlying the Department of Defense's administrative discharge scheme are designed to promote military readiness and efficiency by separating from service those enlisted persons who, if retained, would lower performance and morale. We see no evidence of a punitive or retributive intent.

Nor do we believe that Rice's discharge from the Army had a clear punitive effect or purpose, the second prong of our analysis. The primary effect and purpose of a general discharge under honorable conditions is to separate from service a soldier who fails to meet the Army's standards of conduct. These discharges are an important remedy to ensure the armed services shall consist of persons who maintain high levels of conduct and performance. There is no fine and no incarceration. Had the Army desired to punish Rice or deter others from similar conduct, it had other means to do so. As we have seen, the Army could have prosecuted her for violation of the Uniform Code of Military Justice. Instead, the Army gave Rice a general discharge under honorable conditions, applicable only where a "member's service has been honest and faithful." 32 C.F.R. Part 41, App. A Part 2 § C2(b)(2). There may be some stigma imposed by this form of discharge, but it is significantly less than that associated with a dishonorable discharge or a general discharge under other than honorable conditions. While a general discharge may deter others from similar conduct, that alone is insufficient to transform an otherwise remedial administrative measure into punishment under the Double Jeopardy Clause. See United States v. Ursery, __ U.S.

11

\_\_, 116 S. Ct. 2135, 2149 (1996) (though forfeiture provision serves purpose of deterrence, provision is not punishment under Double Jeopardy Clause; deterrence may serve civil non-punitive as well as criminal goals).  Finally, we note Rice has not pointed to any prior court decision holding that a general discharge is punishment within the meaning of the Double Jeopardy Clause.

**D.**

For these reasons, we hold Rice's general discharge under honorable conditions was not punishment and the Double Jeopardy Clause does not prohibit the government from prosecuting her for the related drug offenses.

Because we hold Rice's discharge was not punishment, we do not reach the question whether jeopardy attached during her discharge proceeding.  See United States v. $184,505.01 in U.S. Currency, 72 F.3d 1160, 1166-67 (3d Cir. 1995) (to prevail on double jeopardy claim, defendant must establish prior jeopardy as well as prior punishment), cert. denied, 117 S. Ct. 48 (1996); United States v. Baird, 63 F.3d 1213 (3d Cir. 1995) (same), cert. denied, 116 S. Ct. 909 (1996); Artway v. Attorney General, 81 F.3d 1235, 1253 (3d Cir. 1996) (If government sanction does not impose punishment, double jeopardy inquiry is at an end).

**IV.**

For the foregoing reasons, we will affirm the judgment of the district court.