# LEE ROHN, Appellant
## v.
# GOVERNMENT OF THE VIRGIN ISLANDS, Appellee

D.C. Crim. App. No. 2004/0165

District Court of the Virgin Islands

Division of St. Croix

May 8, 2006

GORDON C. RHEA, ESQ., St. Croix, U.S.V.I., *Attorney for Appellant.*

GABRIELA HALEY, AAG, St. Thomas, U.S.V.I., *Attorney for Appellee.*

FINCH, *Chief Judge, District Court of the Virgin Islands*; GOMEZ, *Judge of the District Court of the Virgin Islands*; and THOMAS, *Judge of the Superior Court of the Virgin Islands,* Sitting by Designation.

## MEMORANDUM OPINION

### (May 8, 2006)

Appellant Lee Rohn ("Rohn" or "Appellant") brings this interlocutory appeal to challenge the trial court's denial of a motion to dismiss on double jeopardy grounds. We granted permission to appeal and for expedited hearing.

We are asked to decide whether the Government is barred from prosecuting Appellant in the underlying criminal matter under the Fifth Amendment's Double Jeopardy clause.[1] The appellant also argues, in objecting to the trial court's denial of the motion to dismiss, that the court committed clear error in finding that the fine imposed against her by the U.S. Customs Service was pursuant to 19 U.S.C. § 1459, rather than section 1497 of that statute.

For the reasons which follow, the trial court's denial of the appellant's motion to dismiss will be affirmed.

## I. STATEMENT OF FACTS AND PROCEDURAL POSTURE

During a routine screening at the airport while preparing to travel from St. Croix to Puerto Rico on March 29, 2003, Rohn was found carrying approximately 13 grams of marijuana. [See Compl. and Affidavit, Appendix ("App.") at 10-12]. That substance was seized, and a fine of $500 imposed. Appellant thereafter signed a pre-printed agreement to pay ("the agreement") in which she promised to pay that amount. [App. at 007]. That Agreement, signed on the same day as the incident, indicated that Rohn had paid $300 of that fine, and owed a balance of

---

[1]    In her brief, [See Br. of Appellant at 8], the appellant concedes that the second question she initially raised—whether this Court may also consider in this appeal the denial of the Appellant's Motion to Dismiss based on insufficiency of the information— is not properly before the Court in this interlocutory appeal. *See e.g., Diaz v. Gov't of V.I.,* 2004 U.S. Dist. LEXIS 25945 (D.V.I. App. Div. 2004).

$200. The agreement further noted that the fine was imposed pursuant to 19 U.S.C. § 1459, "for failure to declare" the controlled substance. [*Id.*]. Finally, that form notified Rohn of her administrative rights under 19 U.S.C. § 1618 (right to request mitigation of fine).

However, on that same day, a Customs officer also prepared a handwritten "Collection Receipt or Informal Entry," acknowledging receipt of the $300 payment. [App. at 009]. That form contained a handwritten reference to a "Zero Tolerance" policy pursuant to 19 U.S.C. § 1497 and noted that the penalty was $5,000, mitigated to $500. [*Id.*].

A second receipt of April, 7, 2003, acknowledging full satisfaction of the fine, also referred to a zero tolerance policy and payment of a "mitigated penalty." [*Id.* at 008]. That receipt contained no statutory reference, however.

The provisions cited in both documents provide in pertinent part:

### § 1459. Reporting requirements for individuals

(a) Individuals arriving other than by conveyance Except as otherwise authorized by the Secretary, individuals arriving in the United States other than by vessel, vehicle, or aircraft shall—

(1) enter the United States only at a border crossing point designated by the Secretary; and

(2) immediately—

(A) report the arrival, and

(B) present themselves, and all articles accompanying them for inspection; to the customs officer at the customs facility designated for that crossing point

...

(d) Departure from designated customs facilities Except as otherwise authorized by the Secretary, any person required to report to a designated customs facility under subsection (a), (b), or (c) of this section may not depart that facility until authorized to do so by the appropriate customs officer.

(e) Unlawful acts

It is unlawful—

(1) to fail to comply with subsection (a), (b), or (c) of this section;

(2) to present any forged, altered, or false document or paper to a customs officer under subsection (a), (b), or (c) of this section without revealing the facts;

(3) to violate subsection (d) of this section; or

(4) to fail to comply with, or violate, any regulation prescribed to carry out subsection (a), (b), (c), or (d) of this section.

(f) Civil penalty

Any individual who violates any provision of subsection (e) of this section is liable for a civil penalty of $5,000 for the first violation, and $10,000 for each subsequent violation.

19 U.S.C.A. § 1459.

### § 1497. Penalties for failure to declare

(a) In general

(1) Any article which—

(A) is not included in the declaration and entry as made or transmitted; and

(B) is not mentioned before examination of the baggage begins ...

shall be subject to forfeiture and such person shall be liable for a penalty determined under paragraph (2) with respect to such article.

(2) The amount of the penalty imposed under paragraph (1) with respect to any article is equal to—

(A) if the article is a controlled substance, either $500 or an amount equal to 1,000 percent of the value of the article, whichever amount is greater; and

(B) if the article is not a controlled substance, the value of the article.

(b) Value of controlled substances

(1) Notwithstanding any other provision of this chapter, the value of any controlled substance shall, for purposes of this section, be

equal to the amount determined by the Secretary in consultation with the Attorney General of the United States, to be equal to the price at which such controlled substance is likely to be illegally sold to the consumer of such controlled substance.

19 U.S.C.A. § 1497.

Subsequently, the Government filed criminal charges against Rohn for possession of a controlled substance with intent to distribute, under V.I. CODE ANN. tit. 19, § 604(a). Appellant filed a motion to dismiss the information, arguing, inter alia, that the criminal charges offended constitutional double jeopardy principles, in light of the earlier monetary sanction. Appellant also argued below that section 1497, not 1459, was applicable, given its appearance on the collection receipt and given the apparently relevant language of that statute. After a hearing on the motion, [App. at 74-143], the trial court found that section 1459, as noted in the agreement to pay, was controlling. The court denied the motion to dismiss, and this appeal followed.

## II. DISCUSSION

### A. Jurisdiction and Standard of Review

█ This Court's appellate jurisdiction is generally confined, except in limited circumstances, to final orders in criminal cases in which the defendant has been convicted. See The Omnibus Justice Act of 2005, Act No. 6730, § 54 (amending Act No. 6687 (2004), which repealed 4 V.I.C. §§ 33-40, and reinstating appellate jurisdiction in this Court); Revised Organic Act of 1954 § 23A, 48 U.S.C. § 1613a.[2] However, we may nonetheless assume jurisdiction over this interlocutory appeal where Double Jeopardy protections are asserted, given the important protections implicated and the irretrievable loss that would result if a trial is permitted prior to resolution of such a challenge. See United States v. Rivera, 384 F.3d 49 (3d Cir. 2004); Abney v. United States, 431 U.S. 651, 659-63, 97 S. Ct. 2034, 52 L. Ed. 2d 651 (1977) (noting appealability of order on motion to dismiss double jeopardy claim under collateral order doctrine; noting sound policy supports immediate

---

[2] The complete Revised Organic Act of 1954 is found at 48 U.S.C. §§ 1541-1645 (1995 & Supp. 2003), reprinted in V.I. CODE ANN. 73-177, Historical Documents, Organic Acts, and U.S. Constitution (1995 & Supp. 2003) (preceding V.I. CODE ANN. tit. 1).

consideration of double jeopardy claims prior to trial because of the irreparable harm and lost of fundamental rights that would be visited upon a defendant who is forced to undergo the very proceedings he challenges as unconstitutional before seeking redress); *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S. Ct. 1221, 93 L. Ed. 1528 (1949) (explaining collateral order doctrine); *see also* V.I.R. APP. P. 6 (noting authority for permissive appeals).

We exercise plenary review over the appellant's double jeopardy claim. *See United States v. Rice*, 109 F.3d 151, 36 V.I. 343 (3d Cir. 1997); *Hudson v. United States*, 522 U.S. 93, 118 S. Ct. 488, 139 L. Ed. 2d 450 (1997). To the extent the trial court's determination involves findings of fact, however, we may reverse only if clearly erroneous. *See Poleon v. Gov't of V.I.*, 184 F. Supp. 2d 428 (D.V.I. App. Div. 2002).

We may reverse a factual finding based on "clear error" only where "that determination either (1) is completely devoid of minimum evidentiary support displaying some hue of credibility, or (2) bears no rational relationship to the supportive evidentiary data" or where the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. *Georges v. Gov't of V.I.*, 119 F. Supp. 2d 514, 520 (D.V.I. App. Div. 2000).

## B. Whether the Trial Court Committed Clear Error in Finding the Fine Imposed Against the Appellant Was Pursuant to 19 U.S.C. § 1459.

Appellant takes issue with the trial court's finding that the fine imposed by the U.S. Customs Service was done pursuant to 19 U.S.C. § 1459. Appellant's argument draws from an inconsistency in the statutory citations in two separate documents issued by Customs—a pre-printed agreement signed by both parties, citing to section 1459, and a receipt issued upon partial payment of the fine, which included a handwritten citation to section 1497. Appellant argues that neither the language of section 1459 nor the stated fine had any application to her circumstances. She asserts that, despite the reference in the agreement to section 1459, the trial court should have decided that the later reference to section 1497 was correct. The trial court found that section 1459 was controlling, given the fact that it was the statute contained in the agreement signed by the appellant putting her on notice of the

administrative violation, and the fact that the agreement was signed first in time.

▮ Under the circumstances of the case, where the same agency cited to two different statutes on two separate documents issued on the same day, and given the factors weighed by the trial court, the trial court's finding cannot be said to be clearly erroneous. *See Georges*, 119 F. Supp. 2d at 520 and n.4 (noting that where there are two permissible views of the evidence, the judge's choice between them cannot be clearly erroneous) (citing *Linder and Assocs., Inc. v. Aetna Casualty and Surety Co.*, 166 F.3d 547, 551 (3d Cir. 1999)); *see also Bryan v. Gov't of V.I.*, 150 F. Supp. 2d 821, 827 (D.V.I. App. Div. 2001) (same).

Nonetheless, even if we were to find such error, it would be harmless error, because neither the penalties under section 1459, on which the court relied for its analysis, nor section 1497, which Appellant urges is the applicable statute, offend Double Jeopardy principles.

## C. Whether the Appellant's Criminal Prosecution Subjected Her to Double Jeopardy.

▮ The Fifth Amendment's prohibition that no person shall "be twice put in jeopardy of life or limb," guards against multiple prosecutions or multiple punishments for the same offense. *See* U.S. CONST. amdt. V;[3] *United States v. Rice*, 109 F.3d 151, 153, 36 V.I. 343 (3d Cir. 1997) (citing *United States v. Ursery*, 518 U.S. 267, 116 S. Ct. 2135, 135 L. Ed. 2d 549 (1996); *Witte v. United States*, 515 U.S. 389, 115 S. Ct. 2199, 132 L. Ed. 2d 351 (1995)). This prohibition extends generally to circumstances implicating multiple criminal prosecutions for the same offense. *See e.g., Serfass v. United States*, 420 U.S. 377, 387-88, 95 S. Ct. 1055, 43 L. Ed. 2d 265 (1975); *Rice*, 109 F.3d at 153 (noting that double jeopardy concerns are generally not implicated where the first proceeding threatens a civil sanction, rather than loss of liberty); *Hudson v. United States*, 522 U.S. 93, 99, 118 S. Ct. 488, 139 L. Ed. 2d 450 (1997) (protections aimed at guarding against multiple *criminal* trials or punishments). Whether separate punishments or trials are for the "same offense," for double jeopardy purposes, is based not on whether the charges resulted from the same conduct but, rather, whether each

---

[3]　The Fifth Amendment of the U.S. Constitution is applicable in the Virgin Islands pursuant to § 3 of the 1954 Revised Organic Act, as amended, 48 U.S.C. § 1561.

requires proof of the same elements, under the test articulated by the Supreme Court in *Blockburger v. United States*, 284 U.S. 299, 304, 52 S. Ct. 180, 76 L. Ed. 306 (1932). *See Gavieres v. United States*, 220 U.S. 338, 342, 31 S. Ct. 421, 55 L. Ed. 489 (1911) (successive prosecutions); compare *United States v. Dixon*, 509 U.S. 688, 703-704, 113 S. Ct. 2849, 125 L. Ed. 2d 556 (1993) (overruling *Grady v. Corbin*, 495 U.S. 508, 110 S. Ct. 2084, 109 L. Ed. 2d 548, which analyzed the double jeopardy issue based on whether charges or punishment resulted from the same conduct; reafffirming that the Blockburger test, which inquires into whether each offense has an element not contained in another, is controlling); see also, *Hudson*, 522 U.S. at 99 (noting that "the imposition of all additional sanctions that could, in common parlance, be described as punishment," are not barred; rather, what is constitutionally prohibited is the imposition of "multiple criminal punishments for the same offense"). However, our courts have recognized that there are some limited circumstances where imposition of what is otherwise denominated as a civil sanction may also implicate Double Jeopardy concerns.

■ As we noted in *Diaz v. Government,* such a penalty under a civil statute may be found to have put a criminal defendant in prior jeopardy where the court determines the penalty imposed in the civil statute was intended to be criminal. *See Diaz v. Gov't of V.I.*, 2004 U.S. Dist. LEXIS 25945 (D.V.I. App. Div. 2004); *see also Hudson*, 522 U.S. at 99-100; *United States v. Ward*, 448 U.S. 242, 248-249, 100 S. Ct. 2636, 65 L. Ed. 2d 742 (1980). This threshold question is one of statutory construction, the Supreme Court has noted, and is based on whether the statute indicates either expressly or impliedly Congress' preference for one label or another. *See Ward*, 448 U.S. at 248-49 (citing *One Lot Emerald Cut Stones v. United States*, 409 U.S. 232, 237, 93 S. Ct. 489, 34 L. Ed. 2d 438 (1972); *Helvering v. Mitchell*, 303 U.S. 391, 399, 58 S. Ct. 630, 82 L. Ed. 917 (1938)).

■ Where an intent to implement a civil penalty is evident from the statute, courts should then look to whether the statutory scheme "was so punitive either in purpose or effect as to negate that intention." *Ward*, 448 U.S. at 249 (citation omitted); *see also, Hudson*, 522 U.S. at 99-100; *Ursery*, 518 U.S. at 288 (noting courts must determine whether the sanction was intended to be civil and remedial or criminal and punitive,

or whether the statutory scheme was so punitive in purpose, effect, or fact as to negate the legislature's intention to establish a civil remedy).

However, a finding that an otherwise civil penalty is punitive may be made only from "the clearest proof," that the statute had such a punitive purpose and effect as to be transformed into a criminal penalty. *Ward*, 448 U.S. at 249; *see also, Hudson*, 522 U.S. at 99-100; *Dep't of Revenue of Montana v. Kurth Ranch*, 511 U.S. 767, 114 S. Ct. 1937, 128 L. Ed. 2d 767 (1994) (holding state tax of $181,000 imposed on persons arrested for drug possession and distribution had an "unmistakable punitive character" and "was fairly characterized as punishment" where it was expressly tied to illegal conduct).

We note as a threshold matter that neither section 1459 nor 1497 requires an equivalent showing of the essential elements required for conviction under 19 V.I.C. § 604, the criminal statute under which Rohn was charged. Under section 1497, the only act required for imposition of a fine is the possession of "any article" which the person failed to declare. The penalty is not limited to inherently illegal conduct; rather, the prohibited act is the failure to declare an article, and the finding that the article was a controlled substance is relevant only to the amount of the fine to be imposed. There is no intent requirement. Similarly, for imposition of a civil penalty, section 1459 requires only a showing that sections (a)-(d) were violated; those sections address the manner in which individuals are permitted to arrive or depart designated customs facilities. No intent is required for the civil penalty.

However, the criminal statute under which Rohn was charged, 19 V.I.C. § 604(a), requires the Government to prove a scienter element not present in the Customs statutes: 1) that she knowingly and intentionally possessed a controlled substance, and 2) that she did so with the intent to distribute the same. See 19 V.I.C. § 604(a); *compare* 19 V.I.C. § 592 (purpose of controlled substances statutes is to "maintain the health and general welfare of the people of the Virgin Islands"; noting that the illegal importation, manufacture, distribution, and possession and improper use of controlled substances have a substantial and detrimental effect on the health and general welfare of the people of the Virgin Islands).

The imposition of penalties under the federal statutes, therefore, would not bar criminal prosecution under the Double Jeopardy clause,

because they do not raise the specter of multiple punishments for the same offense, as defined under *Blockburger*.

We will nonetheless apply the two-prong inquiry noted in *Hudson* and its progeny for determining whether a penalty in a civil statute may be deemed punitive for double jeopardy purposes.

### 1. Whether The Statute Is Intended To Be Criminal Or Punitive.

We can readily dispense with the first prong identified in *Hudson, Rice* and their progeny. Section 1497 is clearly not intended as a criminal statute, as the Supreme Court has already affirmatively decided. *See One Lot*, 409 U.S. at 236-37 (noting that Congress expressly identified the penalty as civil; also noting that section 1497 was "intended to aid in the enforcement of tariff regulations. It prevents forbidden merchandise from circulating in the United States and, by its monetary penalty, it provides a reasonable form of liquidated damages for violation of the inspection provisions and serves to reimburse the Government for investigation and enforcement expenses."). The penalties outlined in section 1459 are similarly civil sanctions. Congress expressly designated the fines imposed therein as civil penalties. *See* 19 U.S.C. § 1459(f). Moreover, a more stringent criminal penalty is set forth in the immediately succeeding subsection, and is imposed only upon a finding of intent and conviction, which are not required for the civil penalty. *See id.* at § 1459(g); *compare, One Lot*, 409 U.S. at 236 (In determining that an analogous penalty in section 1497 was civil, the Court found particularly relevant the fact that a criminal penalty, in addition to the civil penalty, was expressly provided in the same statutory scheme.). Finally, that Congress had a non-punitive intent in enacting sections 1459 and 1497 is supported by the fact that both provisions are included in the Tariff Act of 1930, and are placed in the "Administrative Provisions" and the "Ascertainment, Collection & Recovery of Duties" provisions, respectively, rather than in the separate enforcement provisions of that Act.

### 2. Whether The Statutory Penalties Are Transformed to Criminal Punishment.

■ The determination that a civil statute, on its face, has such punitive effect as to transform it to a criminal punishment, is to be based on consideration of the following nonexclusive factors:

1) whether the sanction involves an affirmative disability or restraint; (2) whether it has historically been regarded as a punishment; (3) whether it comes into play only on a finding of *scienter*; (4) whether its operation will promote the traditional aims of punishment-retribution and deterrence; (5) whether the behavior to which it applies is already a crime; (6) whether an alternative purpose to which it may rationally be connected is assignable for it; and (7) whether it appears excessive in relation to the alternative purpose assigned.

*Hudson*, 522 U.S. at 99-100 (noting these factors are "guideposts," and no one factor is dispositive; rather, focus is on the determination that penalty is effectively criminal) (internal quotation marks omitted).

First, both sections 1459 and 1497 provide primarily *in rem* penalties in the nature of forfeiture or seizure of the property and monetary sanctions, which traditionally are not viewed as punitive. *See One Lot*, 409 U.S. at 237; *Ursery*, 518 U.S. at 270-71, 291-92 (noting that forfeiture proceedings under the customs laws are *in rem,* and civil *in rem* forfeitures have not historically been regarded as punishment for double jeopardy purposes); *see also, Hudson*, 522 U.S. at 104-05. Significantly, there is also no provision for personal restraint or deprivation of liberty, as is traditional in the criminal context. *See Hudson*, 522 U.S. at 104-05 (noting that debarment from banking injusry [sic] is "certainly nothing approaching the 'infamous punish-ment' of imprisonment") (quoting *Flemming v. Nestor*, 363 U.S. 603, 617, 80 S. Ct. 1367, 4 L. Ed. 2d 1435 (1960) (internal quotation marks in original).

Secondly, as previously noted, violation of the statutes and the imposition of penalties are based solely on a finding of noncompliance with the administrative provisions requiring declaration of imported property, *see* section 1497, and the manner of boarding or departing conveyances, see section 1459. There is no scienter requirement, and the triggering conduct is not itself a criminal act. *See e.g., One Lot*, 409 U.S. at 235, 237 and n.6.

Moreover, the monetary fine provided is not so excessive as to amount to criminal punishment. Section 1459 imposes a fine of $5,000 to $10,000; under section 1497, the penalty is $500 or "1000 percent of the value" of the undeclared controlled substance. That statute additionally

includes a standard for determining the value of the controlled substance. Given the purpose of the statute to deter persons from importing undeclared items and the fact that the penalty is tied directly to the quantity or value of the imported items in each instance, the fines are rationally related to the purpose of deterring entry of undeclared substances, whether legal or illegal.

Appellant relies on *Dep't of Revenue of Montana v. Kurth Ranch*, 511 U.S. 767, 114 S. Ct. 1937, 128 L. Ed. 2d 767 (1994) for her argument that the potentially high penalty in section 1497 has punitive effect. However, given the distinguishing facts in *Kurth Ranch*, that argument is unpersuasive.

In *Kurth Ranch*, a state law whose stated purpose was to raise revenue as well as provide for anticrime initiatives by "burdening" violators of the law instead of "law abiding taxpayers" to deter persons from possessing marijuana, imposed an extra tax of 400 percent of the value of drugs found on a person's possession. *Id.* Finding that tax criminal in nature, despite the Legislature's stated intent, the Court noted that, coupled with the stated deterrent purposes and the high rate of tax, there were other strong indicia of the punitive nature of the tax: the tax was expressly conditioned on the commission of a crime, which pointed to "penal and prohibitory intent rather than the gathering of revenue;" the tax under the statute was levied only after the taxpayer had been arrested for the unlawful conduct; and the tax targeted only those persons who had been arrested for possession of marijuana. *See id.*

The extreme circumstances pointing to an obvious punitive effect in *Kurth Ranch* are simply not present here. Here, the fine is applied to all persons who fail to declare imported controlled substances and, as noted above, the statute targets the failure to declare or comply with the customs regulations, rather than the possession of particular substances.

Finally, although the statutes here admittedly have a deterrent purpose, that factor does not—standing alone—compel a finding that the penalty was of a punitive nature. *See e.g., Hudson*, 522 U.S. at 105 (citing *Kurth Ranch*, 511 U.S. at 781). Indeed, the Supreme Court has rejected any analysis that puts undue emphasis on this isolated factor and instead requires consideration of each statute and a balancing of the factors set forth above. *See Ursery*, 518 U.S. at 270-71, 292; *Hudson*, 522 U.S. at 100, 104-05.

In weighing the effect of a statutory penalty in *Hudson,* the Court noted that deterrence also serves as an underlying goal of most civil penalties. Therefore, notwithstanding the fact that deterrence is also a traditional goal of criminal punishment, "the mere presence of this purpose in a civil statute 'is insufficient to render a sanction criminal, as deterrence may serve civil as well as criminal goals." *Hudson,* 522 U.S. at 105 (quoting *Ursery,* 518 U.S. at 292) (internal quotation marks and citation omitted).

In light of the statutory penalties at issue and the other considerations noted above, we cannot conclude, by the "clearest proof," that the penalties imposed amounted to criminal punishment for double jeopardy purposes.

## III. CONCLUSION

In view of the foregoing, the trial court's denial of the appellant's motion to dismiss on double jeopardy grounds will be affirmed.